## SCOTTSVILLE NAT. BANK v. GILMER.

### In re PITTS.

Circuit Court of Appeals, Fourth Circuit. January 14, 1930.

No. 2912.

W. Allan Perkins and John S. Battle, both of Charlottesville, Va., for appellant.

John S. Graves, of Charlottesville, Va., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an appeal from the District Court of the United States for the Western District of Virginia. Appellant, the Scottsville National Bank, of Scottsville, Va., secured judgment against one D. H. Pitts, on April 28, 1928, in the circuit court of Albemarle county, Virginia, in the sum of $8,068.50, with

interest. On April 25, 1928, D. H. Pitts, defendant in the above-mentioned suit, filed a petition in bankruptcy in the District Court of the United States for the Western District of Virginia, and was duly adjudged bankrupt on April 26, 1928. The schedule filed by said bankrupt shows as one of the debts owed by said bankrupt the debt of the Scottsville National Bank as of $7,335. On May 10, 1928, George Gilmer, appellee, was duly elected trustee of the said bankrupt, and took charge as such.

On June 19, 1928, said trustee wrote appellant bank as follows:

"June 19th, 1928.
"Scottsville National Bank, Scottsville, Virginia.

"In re D. H. Pitts, Bkpt.

"Gentlemen: Mrs. D. H. Pitts has refused to unite with me as trustee in the sale of Valmont, or in the sale of the Charles City property, even if her contingent right of dower in the surplus over liens were commuted. Under those circumstances it is going to be necessary to handle the property in such a way that it will be sold clear of her dower for the property would not bring anything to speak of subject to her dower. It may be necessary to get the property sold under the first lien which is superior to her dower right.

"It has occurred to me that Mrs. Pitts might be on one of the notes held by your bank, and that if you would first get a judgment against her you might have the first claim against her dower. You would get the same rate of dividend on your note regardless of how much you would be able to collect from Mrs. Pitts.

"We are at a loss to understand why Mrs. Pitts takes this course which will keep the creditors from getting as much as they would otherwise get, and also keeps her from getting what she would otherwise get. We have tried to persuade her to take a different course, but she persists in attempting to keep the property from bringing what it would otherwise yield.

"[Signed] George Gilmer."

On June 21st, 1928, the cashier of said bank replied to the above letter as follows:

"June 21st, 1928.
"Mr. George Gilmer, Charlottesville, Va.

"Dear Mr. Gilmer: We acknowledge receipt of your letter of June 19th, advising us of the attitude Mrs. Pitts has taken in regard to the sale of Mr. Pitts' property.

"We regret to say none of Mr. Pitts' notes carry the indorsement of his wife, so we are not in position to take advantage of your suggestion. We thank you, however, for calling our attention to this.

"What became of the settlement in the Pereira estate, and the rights of Mrs. Pereira in this estate? We have seen some checks sent in settlement to the depositors, but have not received anything for our bank.

"[Signed] J. F. Dorrier."

Again on September 22, 1928, the trustee in bankruptcy wrote the following letter to the bank:

"September 22d, 1928.
"Scottsville National Bank, Scottsville, Virginia.

"In re D. H. Pitts, Bankrupt.

"Gentlemen: You are requested to cooperate in getting the best possible price for the Pitts real estate.

"Your dividend is dependent on the price realized for the land.

"[Signed] George Gilmer."

During the course of the administration of the estate, the officers of the bank and counsel for the bank co-operated with and assisted the trustee in bankruptcy in many ways looking toward the proper and advantageous administration of the estate. The trustee had numerous conferences with said officers and counsel with reference to matters pertaining to the administration of the estate, and at all times the trustee treated the officers and counsel of the bank as representatives of a creditor of the estate. On several occasions prior to the sale of the real estate, counsel for the bank and the president of the bank conferred with the trustee relative to the estate's creditors and assets, and borrowed from the trustee the schedule filed by the bankrupt for examination. At the sale of the bankrupt's property, held October 27, 1928, the bank appeared through its officers and bid on all of the real estate offered at auction sale, and bought in the largest item of property, i. e., a farm known as Valmont, at the price of approximately $18,000, the purchase price received from said property being the major portion of the assets collected by the trustee. The bank was next to the highest bidder on all of the other real estate offered, which consisted of half interests in two tracts, which were bought by the owners of the other halves. In the opinion of the trustee, through the efforts of the bank, the value of the estate was increased at least 50 per cent.

Counsel for the bank discovered more than six months after the adjudication that no formal proof of claim had been filed by the bank and called the attention of the trus-

tee to this fact. This was the trustee's first information that the bank had not regularly filed its claim. On the 23d day of November, 1928, formal proof of claim in regular form was filed with the referee in bankruptcy by the bank.

The trustee in bankruptcy objected to the filing of the formal proof of claim referred to above, on the ground that more than six months had elapsed since the adjudication in bankruptcy, and that to allow said proof to be filed would contravene sec. 57n of the Bankruptcy Act (11 USCA § 93(n), and upon the hearing of the matter, which was had before the payment of any dividends to any creditors, the referee allowed the claim to be filed. From this action of the referee in allowing the filing of said claim the trustee appealed to the District Court of the United States for the Western District of Virginia, the judge of which court on May 29, 1928, entered an order overruling the order of the referee. From this order this appeal was taken.

There is no controversy as to the facts in the case, and the questions presented are, first, whether or not there is sufficient in the record in the bankruptcy proceedings to justify allowing appellant bank to file an amended claim after the expiration of the six months allowed to file such claims; and, second, whether the trustee is estopped from objecting to the filing of such amended claim.

In considering the questions involved, we are met at the very outset with the fact that the claim of the bank is an equitable one to the very highest degree. On this point the learned judge below, in overruling the referee and refusing to allow the amended claim, said: "In the case at bar a rejection of its proof of claim will entail a very heavy loss upon the bank, and the creditors who will profit thereby have done nothing to deserve such windfall."

The bankruptcy court is a court of equity, and endeavors wherever possible to do equity, and the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of amended proofs of claim, where there is anything in the record to justify such course of action. It would be harsh and inequitable to refuse the relief upon the statements of facts above recited if there were power to grant it.

The same situation exists in the instant case. This court has discussed the question of the allowance of a filing of an amended claim in Globe Indemnity Co. v. Keeble (C. C. A.) 20 F.(2d) 84, 86, where the court said:

"It is clearly the rule, laid down by all the authorities that have been consulted, that amendments to an imperfect claim to make it correct may be allowed after the expiration of the year for filing claims. The rule may be stated as being that such amendment will be allowed if, in the opinion of the courts, such a course is in furtherance of justice." A further discussion of this question and a review of the authorities will be found in Re Fant (D. C.) 21 F.(2d) 182.

In the case presented here the debt due appellant bank was listed in the schedule filed by the bankrupt, and appears in the record. The letter of the trustee to the bank and the bank's answer thereto, which must be read together, show clearly that both the trustee and bank treated the bank's claim as valid as against the bankrupt estate; the trustee conferred with the officers and the attorney for the bank frequently with regard to matters connected with the estate; the president of the bank knew that the bank's debt was included in the schedule filed by the bankrupt; and it is admitted by the trustee that through the effort of the bank the value of bankrupt's estate was increased at least 50 per cent. All these things lead to the conclusion that there was sufficient in the record to justify the permission to the bank to file an amended claim at the time it presented same for filing, and that the action of the referee in allowing said filing was right.

The judge below, in his opinion overruling the order of the referee, among other cases, relied upon and quoted from the case of In re Patterson-MacDonald Shipbuilding Company (D. C.) 292 F. 759. This case was reversed by the Circuit Court of Appeals of the Ninth Circuit (In re Patterson-MacDonald Shipbuilding Company, 293 F. 192), where Judge Bourquin, speaking for the court, in holding that a letter to the trustee was sufficient to permit a filing of an amended claim, says: "That the letter sets out, and was intended as, a claim against the estate, seems clear." We agree with the conclusion reached by the Circuit Court of Appeals of the Ninth Circuit.

In Re Coleman & Titus Corporation (D. C.) 286 F. 303, under circumstances somewhat similar to those in the instant case, the amended claim was allowed to be filed after the expiration of the time fixed by the statute by a nunc pro tunc order. "Knowing all these facts, was not the bank excusable for not having filed a formal proof? We think it was, and that the court should have permitted it to be filed nunc pro tunc. No one

will be injured by such a course, and all the creditors will then receive the dividend which they expressly or inferentially agreed to take. These views are in accordance with our decisions in In re Kessler, 184 F. 51, 107 C. C. A. 13; In re Salvator Brewing Co., 193 F. 989, 113 C. C. A. 626; In re Roeber, 127 F. 122, 62 C. C. A. 122; In re Mertens, 147 F. 177, 77 C. C. A. 473." In re Basha et al. (C. C. A.) 200 F. 951, 952.

In view of our conclusion on the first point, it is not necessary to decide whether the trustee is estopped from contesting the filing of the claim of the bank.

For reasons given above the judgment of the court below is reversed.