**In re ROTHERT.**

**HOING v. BECKER.**

**No. 4681.**

Circuit Court of Appeals, Seventh Circuit.
July 19, 1932.

Rehearing Denied Oct. 12, 1932.

Phelps F. Darby, of Evansville, Ind., for appellant.

Kahn, Enlow & Meyer, of Evansville, Ind., and William F. Dudine, of Jasper, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal questions the propriety of allowing a claim against the bankrupt estate of Hugo C. Rothert in favor of appellee Becker as trustee for himself and four others.

Rothert was president and managing officer of a state bank at Huntingburg, Ind., and had permitted the Wallace Milling Company to become indebted to the bank in amounts which gradually grew to aggregate more than $93,000. From time to time for years the bank directors, as well as the state bank examiners, protested against this large indebtedness, and Rothert gave them assurance that he personally would protect the bank against loss thereon.

Under date of August 7, 1928, he executed to the bank his two notes, each due in six months, one for $32,000, with certain collateral to secure it, and the other for $30,000, which stated it was made to guarantee the bank against loss on account of the bank's Wallace Milling Company paper.

On December 18, 1928, about which time the milling company went into bankruptcy, the bank examiners came to Huntingburg and demanded that this paper be taken out of the bank. It was arranged that if $50,000 were

raised the balance of that indebtedness could be written off, and Rothert set out to raise the $50,000. He succeeded in interesting five persons, who associated themselves into what they called a pool, with Becker as trustee. Three of these persons were directors of the bank. The pool members agreed to raise the $50,000 provided they were secured for its repayment.

Rothert owned considerable real estate, including a three-eighths interest in a large tract of Texas land. His brother Otto also owned a three-eighths interest in that land, each of the interests being then supposed to be worth about $80,000. Rothert was evidently much indebted, and was advised that if his three-eighths interest were given as security it might be considered preferential and an act of bankruptcy, and he induced his brother to consent to convey as security to the pool his interest in the land, subject to his indebtedness of $11,000 to the bank. As further security it was agreed that Rothert would procure an assignment to the pool of the $62,000 of his notes to the bank, together with his securities which had been put up as collateral therefor. The pool agreement was executed accordingly between the pool members and Otto, and conveyance of Otto's Texas land was made to the pool, or to its trustee, Becker, as were also the $62,000 of Rothert's notes to the bank, together with the collateral therefor; and the pool members paid to or for the bank $50,000. Rothert himself did not sign the agreement, it having been deemed best that he should not do so.

Otto's Texas land did not realize anything beyond his indebtedness to the bank. The collateral for the Rothert notes realized about $20,000, which, deducted from the $50,000 advanced by the pool, left the amount for which the claim in question was allowed against Rothert's estate.

The claim was filed, in which was set out the advance to the bank of the $50,000 by the pool members at Rothert's request, the conveyance to them of the $62,000 Rothert notes and securities, and demand for allowance of the unrefunded balance of the $50,000. The claim was allowed as an unsecured claim on January 3, 1930, for $30,788.75, and a dividend of five per cent. was paid thereon. On March 21, 1930, nearly eleven months after the order of adjudication of Rothert's bankruptcy, the trustee in bankruptcy filed a petition for re-examination of the claim, and on June 17 he filed an amended petition for such re-examination, and for repayment of the dividend. The claimant, on July 2, 1930, pre- sented and asked permission to file an amended claim, in which was set out, additionally to the claim as originally presented, an allegation that Rothert, as an inducement to the pool members for making the pool agreement, promised and agreed to repay to the pool members the $50,000 which they were to advance. The referee refused to permit the amendment to be filed, upon the ground that a new and different claim was thereby stated, and more than six months had passed since the adjudication in bankruptcy. The District Court, upon review of this order, directed the referee to permit the amendment, and to proceed to a hearing upon the merits of the claim, which hearing resulted in its allowance.

From our study of the case, separate discussion of each of the seventeen propositions advanced in appellant's and opposed in appellee's briefs—and each generously supported by citation of authorities—is not required. We think that at most only two questions are involved, and these are quite interdependent.

■ Did the court err in permitting amendment of the claim more than six months after the adjudication of Rothert's bankruptcy? Each side cited numerous cases, in some of which amendment had been allowed and in others disallowed when applied for after expiration of the statutory period.

Concededly, if the amendment does introduce a distinctly new and different claim, its filing after the six months' period would be too late.

We believe that the amended claim is in essence not different from that originally filed, and in its essence is sustainable by the same evidence. The original claim set out the fact that, in order to secure to the pool members repayment of the $50,000, Rothert undertook to have conveyed to them his own notes to the bank, together with the collateral they carried. This of itself sufficiently shows the parties intended that as part consideration for the $50,000 advance the pool would be secured by Rothert's personal undertaking to repay. Whether that promise was in the form of notes he had given to the bank and which the bank would turn over to the pool, or by a direct promise, written or verbal, to pay the amount to the pool, would involve a difference in form only, not in substance. By the amendment it was undertaken only to specify further the nature of the undertaking whereby the alleged agreement to repay the pool was manifested.

The allegation, in the original statement

of claim, that Rothert agreed to procure and did procure the conveyance to the pool of his own partly secured promissory notes for an amount in excess of that which the pool members advanced, is in our judgment tantamount to an allegation of his undertaking to repay them. The amendment cannot therefore be said to have introduced a new or different claim or cause of action, and we hold there was no error in permitting this to be done.

What we have already said is an indication of our view upon the other contention—that the record fails to show any promise or undertaking by Rothert to repay to the pool members so much of the $50,000 which they caused to be paid to the bank as was not realized from Otto's Texas land. Rothert's intention to make good any shortage in this regard is manifest from his procurement of assignment to the pool of his own notes to the bank for a larger amount.

It is undertaken to avert such a conclusion by the contention that Rothert's notes to the bank were without consideration and were void. If it be granted that the notes in the hands of the bank were not enforceable against Rothert, a very different situation arises when Rothert, undertaking to secure the pool members against loss through the advance to the bank he was desirous of having them make, procured these notes to be assigned to them for the very purpose of giving them a security they would not otherwise have. When, therefore, it became manifest that Otto's Texas land had failed to indemnify the pool members for their advance, surely Rothert was in no position to assert that these notes, which with other security he induced the pool members to accept as further security for their reimbursement, were void as to them. Surely Rothert was estopped from then denying the validity of his own notes which, when transferred to the pool for this purpose, were to every intent the same as if they had then been new notes executed by him directly to the pool. The very situation under which the money was advanced by the pool indicates that its members expected, and Rothert was willing to give them, his full personal assurance against loss. Rothert deemed himself liable to make good any loss to the bank on the milling company loans, and the pool members had no apparent reason for advancing the larger amount to the bank without absolute assurance of its repayment. The most natural thing was for Rothert to have undertaken to give them in some form his personal assurance.

Further evidence of Rothert's view of his relation to the pool is afforded by a paper, prepared by the same attorney who drafted the pool agreement, in which Rothert expressed his assent to sell certain of the collateral which accompanied the notes, and stating therein that the $5,000 which was to be paid for that particular collateral should be applied by the trustee "as a credit upon my obligation to said pool before its maturity on February 7, 1929." This paper was dated January 30, 1929, which was nearly three months prior to the filing of his petition in bankruptcy.

The logical effect of holding these notes invalid as against the pool would be also to hold invalid the transfer of the securities which went with one of the notes, and whereon there was realized about $20,000, which went to the pool in reduction of its loss. The right of the pool to take what was realized from the security does not seem to be questioned. If the pool had the right to that which was so realized on the security, then by the same token it would have the right to realize upon Rothert's obligation, as manifested by the notes, to the extent that it was not otherwise reimbursed for its advances.

We can see no reason why we should disturb the order allowing this claim, and that order is affirmed.