## TRINIDAD NAT. BANK v. FLOYD et al.
### No. 786.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1933.

Fred R. Wright and Gail L. Ireland, both of Denver, Colo., for appellant.

C. A. Bailey, of Denver, Colo., for appellees.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

The Western Holding Company, a corporation, was adjudged bankrupt on January 11, 1932, and this is an appeal from an order disallowing appellant's claim for $16,500.

Appellant owned all of the capital stock of Hamerslough Stores, Inc., except three qualifying shares held by its directors. Its capital was divided into 500 shares, each of the par value of $100. That corporation was engaged in the business of buying and selling at retail dry goods and other merchandise at Trinidad, Colorado. A. B. Servey was employed sometime in 1930 and became its general manager. In February, 1931, appellant bank agreed to sell to Servey all of the capital stock of that corporation for $16,500, and he agreed to purchase it at that price. It was agreed $7,500 should be paid down and the remainder, $9,000, secured.

Servey was without ready funds. He expected to be able to raise and pay $2,500 himself and to obtain $2,500 from each of two other persons, who were to become interested. This plan was known to the bank. Servey deposited with the bank a note given by one Barrow for $16,210 as collateral to his agreement. The bank shortly thereafter learned that Barrow denied obligation on the note so deposited, and another plan to carry through the deal was agreed upon.

A vice-president of the bank, who carried on the negotiations, testified, and he is in no respect contradicted, that after the first plan fell through it was decided to draw up the papers of a holding company, which was to be called the Western Holding Company, instead of having a new company to take over only the Trinidad store as first planned. The Western Company would have the Trinidad store, one at Keenesburg, Colorado, one at Springfield, Colorado, and one at Hugoton, Kansas. Servey had interests in stores at those three towns. He further testified that appellant bank had no interest in the Holding Company itself, that its interest was to get the purchase price according to the deal theretofore made with Servey, "$7,500.00 in cash and the note of The Western Holding Company, or of Servey, for $9,000.00 secured by a note of The Western Holding Company and by all of Servey's stock in that company, which he would acquire" when the stores should be turned over to the Western Holding Company; that "the purchase price of $16,500 remained constant during all of these negotiations." He further testified that the Western Holding Company was to give the bank its note when the transaction was completed to take up notes of the Hamerslough Stores, Inc., which it then held.

When the Western Holding Company was organized it took possession and management of the Trinidad store and continued to operate it until it was adjudged bankrupt. It shipped goods of that store to the other stores which it acquired on being organized.

When Barrow repudiated his obligation on his note for $16,210 the bank surrendered it as collateral, and Servey arranged to use it for another purpose.

The Western Holding Company was organized as a Colorado corporation in May, 1931, by A. B. Servey, Katherine M. Servey and one Buckley. They were its incorporators and also its sole directors, and Servey was its president. The organization meeting of that company and the first meeting of its directors appear to have been held at the same place on the first day of June, 1931. At that meeting A. B. Servey represented that the stock and fixtures in the store at Springfield, Colorado, were worth the sum of $8,500, that it had no debts, and he offered to transfer it to the Western Holding Company in consideration of its issuing to him eighty-five shares of its stock. His proposition was accepted.

He also represented that he was the owner of the store at Keenesburg, Colorado, the stock in which was worth $2,500 after deducting its indebtedness, and he offered to transfer that store to the Western Holding Company in consideration of its issuing to him twenty-five shares of its stock, and its agreeing to pay the indebtedness of that store. His offer was accepted. He also represented to the meeting "that he is the owner of 497 shares, being all of the stock of Hamerslough Stores, Inc., except three shares held by the present directors of said Hamerslough Stores, Inc.," and he offered to transfer that stock to the Western Holding Company in consideration of its issuing to him fifty shares of stock in the Western Holding Company and the execution by said company of a note payable to him in the sum of $9,000. That proposition was accepted, and the meeting ordered that "the vice-president and secretary" of the Western Holding Company issue to Servey, or his nominee, fifty shares of the stock of this company and to also execute and deliver to A. B. Servey its promissory note on the form of the Trinidad National Bank in the sum of $9,000, due on or before six months after date, with interest at seven per cent.

The vice-president of the bank testified that these organization minutes were drawn up by an attorney at his and Servey's suggestion. From them and testimony on the subject there can be no doubt that the bankrupt corporation took over Servey's obligation under his original contract with the bank to buy the capital stock of the Hamerslough Stores, Inc. It accepted that stock in consideration of fifty shares of its own stock to be issued to Servey and its $9,000 note to be given to him. The plan of payment remained the same, $7,500 was to be paid in cash, and that was to be raised in the manner testified to by the vice-president, Servey putting up $2,500 and each of two other persons, who were to become interested, putting up $2,500. The raising of the $7,500 as part of the purchase was a duty and obligation of Servey according to the terms of the contract he made with the bank, but it is more than probable that the $9,000 note given by the Holding Company to Servey was intended as the deferred payment on the purchase price of the capital stock. There is no proof of an express promise by the Holding Company to make the cash payment of $7,500, but it could not take over and appropriate to its own use, as it did, all of the benefits accruing to the purchaser under Servey's contract and relieve itself of the duties and burdens on the purchaser. The law implies the promise. With its consent it was substituted as purchaser, and was liable as such. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Gardiner v. Equitable Office Bldg. Corp. (C. C. A.) 273 F. 441, 17 A. L. R. 431; Fletcher, Cyc. Corporations, vol. 1, § 152; German Sav. Inst. v. De La Vergne Refrig. Mach. Co. (C. C. A.) 70 F. 146. No part of the purchase price has been received by the bank.

After the Holding Company was organized it opened an office in Denver, and Servey undertook the management of its affairs from that office. Apparently he had sole control. He put in a good part of his time going from store to store, and he purchased or agreed to purchase a store in Oklahoma to which he had goods shipped from the Trinidad store, but the bank could never get him to come to Trinidad to close the deal, although it made repeated requests that he come. The organization of the Holding Company and its taking over the store at Trinidad were the last steps toward the execution of the contract. It functioned as a corporation for seven months after it was organized. Then its creditors had it adjudged bankrupt.

Reversed with directions to allow appellant's claim in full.