### COOK v. UNION TRUST CO. OF MARYLAND.
#### No. 3634.
Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

646

J. Edward Adkins, Jr., and J. Calvin Carney, both of Baltimore, Md., for appellant.

Joseph T. Brennan and Charles Ruzicka, both of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from the order of the District Court of the United States for the District of Maryland, in the matter of the Safety Building & Loan Association of Baltimore City, Incorporated, bankrupt.

The Safety Building & Loan Association was adjudicated a bankrupt on November 17, 1931, and on December 29, 1932, the appellee, the Union Trust Company of Maryland, filed a petition with Willis E. Myers, referee, before whom the case was pending, setting forth that the trust company had prepared and submitted a claim against the bankrupt before the expiration of six months after the adjudication; that the claim had been returned by the referee to the attorney for the trust company with instructions to do certain things with regard to the collateral which was held by the trust company to secure its debt. The petition prayed that the claim of the trust company be filed and the petitioner be allowed to share in all dividends paid by the bankrupt estate. The claim of the trust company amounted to $29,274.15. Upon this petition the referee signed an order dated December 29, 1932, allowing the amended claim to be filed nunc pro tunc as of May 17, 1932. The claim had been listed in the bankrupt schedules, and both the trustee and his counsel knew of its existence. Correspondence was had between the attorneys for the trustee and the trust company with regard to the claim and the collateral that secured it.

Subsequent to the entry of the nunc pro tunc order, Myers, the referee, died. The allowance of the claim of the trust company was contested by the trustee, and testimony was taken before W. Ainsworth Parker, referee. After the hearing of the evidence, Parker reached the conclusion that he was disqualified from reporting on the matter due to the fact that he and counsel for the trust company were members of the same law firm. The case was then referred to Referee J. Leroy Hopkins, who made a report to the District Court finding that about March 18, 1932, the attorney for the trust company presented the claim to Referee Myers; that the claim was properly signed and sworn to by the proper officers of the trust company, and that it was returned by the referee who had discussed the question of the claim and of the collateral given to secure it with the attorney; that Referee Myers requested the attorney for the trust company to liquidate the collateral as far as was possible and ascertain the value of such of these securities as might not be liquidated and refile the claim for the net amount; and that the referee requested that a list of the unliquidated securities be filed with the claim.

The referee held as a matter of law that the motion of the trustee to expunge the claim of the trust company be dismissed and the claim allowed. Upon petition for review of the referee's order, the judge of the District Court ratified and confirmed the order in every respect, from which action this appeal was brought.

There was some conflict in the testimony. The attorney for the trust company testified that he tendered the account to the referee for filing well within the six months' period and that the referee returned it to him with the request that some further action be taken with regard to the collateral. The secretary to the deceased referee testified that she had seen the attorney for the bank in the referee's office several times and had heard him discussing this claim with the referee; that it was the custom of Referee Myers never to enter claims on the docket until all details with regard to them were completed; that the attorney for the trust company had notified her to send all notices with respect to the bankruptcy case to the trust company; and that she noted this fact on the docket. One of the attorneys for the trustee testified that in a conversation with Referee Myers with respect to the entry of the nunc pro tunc order Myers had stated that he had some recollection of the original presentation of the claim and thought it was proper to allow it.

On the other hand, an attorney for the trustee testified that the attorney for the trust company had stated that the trust company did not intend to file any claim against the

bankrupt estate, but intended to rely upon the collateral they held, and that he (the attorney for the trust company) felt very kindly toward the trustee, whose company had a claim, and that he (the attorney) was anxious to assist him (the trustee) to get all he could out of the estate.

We are of the opinion that the circumstances as shown by the evidence justified the findings of Referee Hopkins. The direct testimony of the attorney for the trust company, the testimony of the secretary of the deceased referee, and the correspondence in the case, all go to prove the truth of the evidence given by the attorney for the trust company. The fact that Myers thought it proper to enter the nunc pro tunc order and the fact that he stated to one of the attorneys for the trustee that he had a recollection of the presentation of the claim, are also in favor of the contention of the trust company.

We would not be justified in setting aside the report of the referee confirmed in every particular by the judge when the evidence so strongly supports the report.

Having reached the conclusion that the claim of the trust company was first tendered for filing before the end of the six months' period, the instant case is controlled by the decision of this court in Scottsville National Bank v. Gilmer, 37 F.(2d) 227, 229, where we said: "The bankruptcy court is a court of equity, and endeavors wherever possible to do equity, and the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of amended proofs of claim, where there is anything in the record to justify such course of action."

The provision of the statute requiring the filing of claims within six months after adjudication cannot be ignored, and, unless there is something appearing in the record to show that a claim was filed, then, of course, there can be no amendment and no filing by an order nunc pro tunc. On the other hand, where something has been done, before the expiration of the six months' period, that amounts to the filing of a claim, the proofs of the claim can be amended, where it is equitable to do so, after the expiration of the period. This has been the uniform holding of this court. Scottsville National Bank v. Gilmer, supra; Globe Indemnity Co. v. Keeble (C. C. A.) 20 F.(2d) 84; Cotton v. Bennett (C. C. A.) 59 F.(2d) 373; In re Fant (D. C. S. C.) 21 F.(2d) 182.

See, also: In re Brill (C. C. A.) 52 F.(2d) 639; In re Kessler (C. C. A. 2d) 184 F. 51;

In re Atlantic Gulf Corp. (D. C. Md.) 26 F.(2d) 751.

Compare: In re Lipman (C. C. A.) 65 F.(2d) 366; In re Hotel St. James Co. (Lacoe v. De Long) (C. C. A.) 65 F.(2d) 82; In re Lago (D. C.) 38 F.(2d) 887; In re Baker's Baking Co. (D. C.) 285 F. 652; In re Gubelman (C. C. A.) 10 F.(2d) 926; In re R. B. Rose Co., Inc. (D. C.) 43 F.(2d) 446; In re Silk (Cloutman v. Weill) (C. C. A.) 55 F.(2d) 917; In re Thompson (First National Bank v. West) (C. C. A.) 227 F. 981.

Here there was a filing within the six months' period. The collateral held by the trust company was of such little value that it is not probable that the trust company would have depended upon the security it held without filing the claim against the bankrupt estate. It would be inequitable and unjust to deprive the trust company of participation in the distribution of the estate.

The order of the court below is accordingly affirmed.