## GARVIN v. HICKAM.
No. 1493.

Circuit Court of Appeals, Tenth Circuit.
July 2, 1937.

Rehearing Denied Sept. 8, 1937.

C. D. Cund and Frank G. Anderson, both of Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., Geo. N. Otey, of Ardmore, Okl., and Conner & Winters, of Tulsa, Okl., on the brief), for appellant.

Isaac D. Taylor, of Oklahoma City, Okl., for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

Knox L. Garvin is aggrieved at the disallowance of his amended claim against York Petroleum Company, a bankrupt, hereinafter called York, in the sum of $103,424.-50. The claim is founded upon a contract for the sale of corporate stock in Wirt Franklin Petroleum Corporation.

J. I. Cromwell and his wife and their son owned in survivorship all of the stock in York. Cromwell was president, director, and general manager. His wife and son sometimes participated in conferences and signed minutes, but he exercised complete domination and control of it. It did not operate oil or gas leases. Its assets consisted of money derived from the sale of royalties made in 1924, and other investments including stocks and bonds. In April, 1930, it had $323,000 in cash. It also had unpledged government bonds of $333,000 in a vault in New York. Cromwell kept practically no books. His personal accounts were frequently paid with money of the corporation and charged to his salary account.

Cromwell and Wirt Franklin decided early in 1930 to effect a merger of the properties of Franklin, Wirt Franklin Petroleum Corporation, and Cromwell-Franklin Oil Company. Garvin and two other stockholders (Gant and Feagin) in Wirt Franklin Petroleum Corporation opposed the proposed merger, and in order to carry out the plan it was arranged for Cromwell and Franklin to make large purchases of stock from them. In accordance with the arrangement, claimant and Cromwell entered into a contract on April 12, 1930, in which Cromwell agreed to purchase from claimant 1,627 shares of preferred and 8,135 shares of common stock of Wirt Franklin Petroleum Corporation at the price of $284,725. A cash payment of $94,908.34 was made and two promissory notes were executed for the balance, each being for a like amount, due one and two years from date, respectively, and signed by Cromwell. Certificates for 543 shares of preferred and 2,715 shares of common stock were issued and delivered to Cromwell, and the remainder was deposited in escrow to secure payment of the balance of the purchase price. Similar contracts were made with Gant and Feagin, except as to dates, amounts of stock, and consideration. For the purpose of providing money with which to make purchases of stock, Cromwell and Franklin borrowed $300,000 from the First National Bank of Tulsa and $350,000 from the Exchange National Bank in the same city, executing their joint promissory notes therefor. The amount in each instance was deposited in a joint account of the two individuals and each had authority to draw checks against

it. The initial payments on the stock acquired from claimant, Gant and Feagin, and payments to other selling stockholders were made from such account. The notes given to the banks, the stock purchased from claimant and issued to Cromwell, and the notes executed to claimant were entered upon the books of York as assets and liabilities. The entries were made in July, 1930, but they were set up as of April 12th; and vouchers were made and preserved relating to the transactions. York made payments on principal and interest due claimant, Gant and Feagin. The first and second installments of interest were made to claimant on July 7th and October 12th, respectively, by checks drawn on the special account in the First National Bank. After the money in the special account had been exhausted, York made payments from time to time with its own funds. The note to the Exchange National Bank was paid. Franklin and York each paid half of it. When the note to the First National Bank came due, it was increased to $350,000. In compliance with a demand of the bank, the renewal note was signed by York and Franklin. That was required because a large part of Cromwell's assets were held by York. When the renewal note matured, it was divided into two notes of $175,000 each. York signed one and Franklin indorsed it, while Franklin signed the other and York indorsed it. York transferred some real estate to Cromwell in order that he could give Gant a mortgage upon it to secure the unpaid balance on the stock acquired from him.

York and Cromwell were each adjudged a bankrupt on November 13, 1933. Stock which had been acquired by Cromwell from claimant under the purchase contract was listed as an asset of York, while the unpaid balance due claimant was listed as a liability of Cromwell. The stock remaining in escrow was not listed by either.

Claimant filed his original claim against York on January 17, 1934, for the balance on the note due two years after date, reciting that in the transfer of the stock, the execution of the note, and the making of the pledge, Cromwell acted as agent and trustee for York. A copy of the note was attached. The trustee filed objections to the claim on March 22, 1934, in which he denied that York executed the note; denied that Cromwell acted as agent or trustee for York in the transaction; denied that claimant had a lien upon any property or assets of York; and alleged that any agreement which purported to make the note an obligation of York, was unauthorized, ultra vires, and illegal. Hearing on the issues thus joined was commenced on June 5th, and at its conclusion the referee allowed claimant to amend the claim by alleging in addition to the matters previously recited that even though Cromwell made the contract in the first instance, York had assumed the obligation and became liable for the debt. The amended claim was filed on September 11th. The referee allowed it on the ground that York had assumed the obligation. On review, the court below sustained the action of the referee in permitting the amendment, but found that the evidence failed to establish assumption of the debt and, accordingly, rejected the claim.

The original claim was filed within the permitted time. It recited at length the sale and transfer of the corporate stock, the delivery of a part of it, the execution of the note as evidence of a part of the purchase price, the pledge of the remaining stock as security for the note, the amount due on the note, an assertion of liability of York, and an intention to look to it for payment. It was duly signed and verified and thus contained all of the recitals required by section 57a of the Bankruptcy Act (11 U.S.C.A. § 93(a). The amended claim contained all of these recitals, the only difference between them being the manner in which York became liable. It was averred in the former that Cromwell acted as agent and trustee for York in the execution of the contract and note, while in the latter it was stated that York assumed the contract and thus became liable. The obligation is the same and the amount is not different. The sole distinction is the manner in which liability was incurred. It is an inveterate rule of wide acceptation that an inartificially drawn or defective claim filed within time may be amended after the expiration of such period. Courts of bankruptcy are liberal in permitting amendments to formal claims even though the statutory period has expired. Hutchinson v. Otis, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179; In re Roeber (C.C.A.) 127 F. 122; In re Faulkner (C.C.A.) 161 F. 900; In re Ashland Steel Co. (C.C.A.) 168 F. 679; In re Kessler (C.C.A.) 184 F. 51; In re Thompson (C.C.A.) 227 F. 981; Globe Indemnity Co. v. Keeble (C.C.A.) 20 F.(2d) 84; In re Fant (D.C.) 21 F.(2d) 182; Scottsville Nat. Bank v. Gilmer (C.C.A.) 37 F.(2d) 227; Cotton v. Bennett (C.C.A.) 59 F.(2d) 373; In re Rothert (C.C.A.) 61 F.(2d) 1;

326

In re Marshall's Garage (C.C.A.) 63 F.(2d) 759; Lewith v. Irving Trust Co. (C.C.A.) 67 F.(2d) 855; In re International Match Corp. (C.C.A.) 69 F.(2d) 73; Cook v. Union Trust Co. (C.C.A.) 71 F.(2d) 645. The contention argued here falls within that doctrine. The amendment was properly allowed.

■ Taking up the remaining question, no express assumption of the obligation was shown, but that fact has very little ·significance in view of the relationship existing between Cromwell and York. York was a family corporation and Cromwell was its alter ego. The entire transaction was·entered upon the books of the corporation in July, but the entries were made as of the date of the transaction. Every detail was entered as an asset or liability. Some of the payments were made from the special fund and some with money of the corporation. York paid half of the note due the Exchange National Bank. It signed the first renewal at the First National Bank, and when the note was subsequently divided it signed one note as principal and indorsed the other. It made two financial statements to the bank in which it represented itself as owning the benefits and subject to the· obligations of the contract with claimant, Cromwell signing such statements on behalf of the corporation; and it conveyed certain real estate to Cromwell in order that he could execute a mortgage upon it to secure Gant. Cromwell delivered to Gant 400 shares of stock in the First National Bank of Tulsa at an agreed value and a note of $50,000 signed by Wirt Franklin and payable to York. Both stock and note belonged to York and they were delivered for credit on the note which Cromwell gave Gant in the purchase of his stock. The secretary of Wirt Franklin Petroleum Corporation testified that Cromwell told him he had made a mistake in having the stock issued to himself instead of York; that the transfer would require new revenue stamps; and the two discussed the surrender of the certificates to be marked "issued in error" and the issuance of new certificates. Cromwell testified that he had not negotiated with York concerning the transaction prior to the execution of the notes to the banks or the contract with claimant; that it looked as though the merger would be consummated with considerable profit; that the entries were made in the books of the corporation in·order to pay less income taxes; and that the original entries were made after the first

of July because the state corporation tax reports ran from July to July. He did not expressly deny that York assumed the obligation.

We think the evidence considered as a whole clearly shows an implied understanding and agreement on the part of York to assume the obligation due claimant. Upon the obligation being assumed in that manner, the law created the promise to pay and established the relation of debtor and creditor between York and claimant which is enforceable in the bankruptcy proceeding. Trinidad Nat. Bank v. Floyd (C.C.A.) 66 F.(2d) 359.

■ It is suggested that if the evidence establishes assumption, it was subsequently rescinded. ·The only evidence ₜending remotely to show rescission is the failure of York to list the obligation as a liability. That is wholly insufficient, especially in view of the fact that the stock purchased and paid for was listed as an asset.

That part of the order denying the claim is reversed and the cause is remanded with direction to allow the claim.