**In The Matter of AERO BULK MANU-FACTURING COMPANY, Bankrupt.**

**In The Matter of TIMMONS & EVANS COMPANY, Bankrupt.**

**Nos. 24999, 25000.**

United States District Court
W. D. Missouri, W. D.

Sept. 3, 1963.

Dietrich, Tyler, Davis, Burrell & Dicus, by James J. McGannon, Kansas City, Mo., for Baltimore Bank.

George L. Gisler, Kansas City, Mo., for trustee in bankruptcy Paul Berman.

DUNCAN, District Judge.

The Baltimore Bank, a creditor of the bankrupts herein, filed a "Petition For Review of Referee's Order" alleging that it is aggrieved by an order of the Referee disallowing its claims. The Petition was certified by the referee to this court.

The facts are not in dispute, and are before the Court on the same Stipulation as was filed with the Referee in Bankruptcy for his consideration in passing upon the Bank's claims. It is a part of the record of the Bankruptcy Court which

has been certified to this court. It provides as follows: (Caption omitted)

## "STIPULATION OF FACTS

"Comes now the Baltimore Bank by its attorney Ilus W. Davis, a creditor of the above-named bankrupts, and Paul E. Berman, the Trustee in bankruptcy herein, and stipulate and agree that the statements and assertions of facts hereinafter recited may be taken to be true and correct by the Bankruptcy Court in its consideration of the Trustee's objection to the claim of Baltimore Bank, and the parties hereto expressly waive the presentation of evidence on the same. The agreed statement of facts is as follows:

"1. A voluntary petition in bankruptcy was filed in this Court on behalf of Aero Bulk Manufacturing Co., a corporation, on January 13, 1961, and was docketed as Case No. 24999. A voluntary petition in bankruptcy was filed in this Court on behalf of Timmons & Evans Co., a corporation, on January 13, 1961, and was docketed as Case No. 25000. The first meeting of creditors in both cases was scheduled and held on February 15, 1961.

"2. Baltimore Bank is the holder of the following promissory notes:

"(a) A promissory note executed on December 19, 1959, by Aero Bulk Manufacturing Co. in the sum of $14,550.80. Payments were made on January 29, 1960, February 24, 1960, March 21, 1960 and April 19, 1960, leaving a balance due of $4,550.00.

"(b) A promissory note executed by Aero Bulk Manufacturing Co. on April 26, 1960, due May 26, 1960, in the sum of $5,755.94, on which the unpaid balance due is $5,755.94.

"(c) A promissory note executed by Timmons and Evans Company on February 20, 1960, due 90 days after date in the sum of $10,000.00. Interest was paid to May 20, 1960. Principal balance due on the note is $10,000.00.

"(d) A promissory note executed by Timmons and Evans Company on February 24, 1960, in the sum of $26,041.66, on which there was a payment on March 28, 1960, leaving an unpaid balance of $23,-541.66.

The principal balance now due to Baltimore Bank under the terms of the aforesaid notes is $43,847.60. The total claims filed, including the claim of Baltimore Bank against the above-named bankrupts, amount to $117,633.02.

"3. James J. McGannon, as agent and attorney for Baltimore Bank, attended the first meeting of creditors herein on February 15, 1961, and participated in the election of the Trustee. His appearance was duly noted by the Referee and is reflected in the Court's file.

"4. Paul E. Berman was elected Trustee in bankruptcy herein at the first meeting of creditors. Prior thereto he had been the receiver of the assets of the above-named bankrupts pursuant to an assignment for the benefit of creditors executed in July, 1960.

"5. John H. Windsor, Jr., agent and attorney for Baltimore Bank, attended a meeting of creditors on March 6, 1961, relating to the consolidation of the above cases into one case. His appearance was duly noted by the Referee and is reflected in the Court's file.

"6. At the creditor's meeting on March 6, 1961, the Referee entered an order consolidating the above cases into one case under Case No. 24999.

"7. On July 7, 1960, Thomas B. Franklin, Vice President of Baltimore Bank, wrote a letter to said Paul E. Berman, a copy of which let-

ter is attached hereto, marked 'BALTIMORE BANK EXHIBIT A', and made a part hereof.

"8. The Trustee in bankruptcy, the said Paul E. Berman, has at all times since the filing of the bankruptcy petition, and even prior thereto in his capacity as Receiver of the assets of the above-named bankrupts pursuant to an assignment for the benefit of creditors, had knowledge that the Baltimore Bank held notes of the bankrupts on which there was claimed to be due substantial amounts.

"9. That counsel for Baltimore Bank wrote to Mr. Paul E. Berman on October 27, 1961, copy of which letter is attached hereto, marked 'BALTIMORE BANK EXHIBIT B', and made a part hereof.

"10. That the said Paul E. Berman responded to counsel's letter of October 27, 1961, by letter dated October 31, 1961, copy of which is attached hereto, marked 'BALTIMORE BANK EXHIBIT C', and made a part hereof.

"11. On January 27, 1961, the Baltimore Bank received notice from the Bankruptcy Court of the filing of a petition in bankruptcy by the above-named bankrupts and, on January 31, 1961, turned the matter over to the Bank's attorneys with instructions to file formal proof of claims against the said bankrupts. The Bank assumed the claims had been duly filed. Three of the Bank's attorneys worked on the file at various and separate times, each of the three attorneys represented the Baltimore Bank and acted as its agent and attorney in connection with the bankruptcy proceedings at various and separate times, and each of said attorneys thought that one of the other attorneys had filed formal proof of claims herein on behalf of the Baltimore Bank, whereas, in fact, formal proof of claims had not been filed. In June, 1961, one of said attorneys resigned from the law office and left the active practice of law. In the confusion which resulted from the resignation of an attorney from a law office, formal proof of claims was not filed within the six-month period. This was discovered by the Bank's attorneys, and the formal proof of claims was thereupon filed on January 4, 1962.

"12. On September 1, 1960, Baltimore Bank filed suits against the said corporations to enforce its said claims against them. These suits were filed in the Circuit Court of Jackson County, Missouri, at Kansas City, and are described as follows:

"A. Case No. 628018 in the Circuit Court of Jackson County, Missouri, at Kansas City entitled 'Baltimore Bank, Plaintiff, vs. Aero Bulk Manufacturing Co., a corporation, Timmons & Evans Co., a corporation, W. A. Timmons, Jr., and H. E. Prescott, Defendants.' filed on September 1, 1960. The suit is based on two notes executed by Aero Bulk Manufacturing Co. on December 19, 1959, and on April 26, 1960, and endorsed by the other defendants named therein, the total unpaid balance of principal thereon amounting to $10,305.94. The claim which was filed herein by the Baltimore Bank against the bankruptcy estate of Aero Bulk Manufacturing Co. is based on the same facts as the cause of action in said Circuit Court case.

"(1) All of the defendants named in said suit, including the bankrupts, duly entered their appearance in said suit, and on November 25, 1960, filed their answer therein, which consisted of a general denial of the allegations of the Bank's petition.

"(2) Said suit is now at issue, and is pending in the Jackson County Circuit Court.

"(3) Baltimore Bank orally informed the Trustee of the pend-

ency of said suit, but did not make him a party thereto.

"B. Case No. 628017 in the Circuit Court of Jackson County, Missouri, at Kansas City, entitled 'Baltimore Bank, Plaintiff, vs. Timmons & Evans Co., a corporation, and W. A. Timmons, Jr., Defendants.' filed on September 1, 1960. The suit is based on two notes executed by Timmons & Evans Co. on February 20, 1960, and on February 24, 1960, and endorsed by the other defendants therein named, the total unpaid balance of principal thereon amounting to $33,541.66. The claim which was filed herein by the Baltimore Bank against the bankruptcy estate of Timmons & Evans Company is based on the same facts as the cause of action in said Circuit Court case.

"(1) Both defendants in said suit, including Timmons & Evans Company, the bankrupt, entered their appearance in said suit, and on November 25, 1960, filed their answer therein, which consisted of a general denial of all the allegations of the Bank's petition.

"(2) Said suit is now at issue, and is pending in the Jackson County Circuit Court.

"(3) Baltimore Bank orally informed the Trustee of the pendency of said suit, but did not make him a party thereto.

"13. There have been no exchanges of correspondence between the Baltimore Bank, its attorneys and the Trustee, other than the letters attached as exhibits to this stipulation. There were no papers filed with the Court or the Referee on behalf of the Baltimore Bank prior to the filing of the claims on January 4, 1962. The Trustee filed objections to the claims filed by Baltimore Bank, which objections, and the claims filed on January 4, 1962, may be considered as part of this stipulation.

"14. No dividends have been paid out to the creditors herein by the Trustee."

(Signatures omitted)

The Bank's claim was not filed within six months, and was for that reason denied by the Referee. The question for determination is the correctness of the Referee's ruling.

The facts in this case, as revealed in the Stipulation, present one of those unfortunate situations that occasionally face the court, for which no relief can be found.

Briefly, summarizing the facts as set out in the Stipulation, the two bankrupt corporations which were operating jointly, and some time prior to their adjudication as bankrupts, made an assignment for the benefit of Creditors. Paul Berman was selected receiver. At that time the Aero Bulk Manufacturing Company was indebted to the Baltimore Bank of Kansas City in the sum of $10,305.94, and the Timmons & Evans Co., in the sum of $33,541.66, making a total claim of $43,847.60.

On July 7, 1960, during the time Berman was receiver under the assignment, the President of the Baltimore Bank wrote him advising of the amount of the bank's claim and setting out the indebtedness in detail.

While the corporations were in receivership, the Bank instituted suits against each of them in the Circuit Court of Jackson County, Missouri, to recover the amount of the indebtedness of each. The receiver was not made a party thereto.

On January 13, 1961, each of the corporations filed a voluntary petition in bankruptcy. (These cases have been consolidated, and that is not an issue in this proceeding).

At the first meeting of creditors held on February 15, 1961, the Bank was represented by its attorney and took part in the election of Paul Berman as Trustee.

In the voluntary petitions in bankruptcy, the Baltimore Bank's claims were duly

scheduled. After the first meeting of creditors, the trustee and the attorneys for the Bank discussed the question of the Bank's claims, but no written claim of any kind or character was ever filed in the bankruptcy proceeding. The only correspondence passing between the trustee and the attorneys for the Bank was a letter dated October 27, 1961, signed by one of the attorneys for the Bank asking the status of the case. Specifically, this letter was as follows:

"Mr. Paul E. Berman
"838 Lathrop Building
"Kansas City, Missouri

     "Re: Timmons & Evans Co.
"Dear Paul:

"Would you please bring me up-to-date on the above matter and give me your best guess as to when the bankruptcy might be cleared up and some distribution made to the Baltimore Bank." Signed by one of the attorneys for the bank.

In reply to this letter, the Trustee addressed a letter to the attorney dated October 31, 1961, which stated:

"Harold Prescott, one of the principals of Aero-Bulk has filed a claim for approximately $21,000.00. This claim must be opposed. When that matter has been concluded, the estate will be ready for closing. We suggest that you advance your file about ninety days.
         "Sincerely,
"P. S. We assume that the bank has filed its claim."

The claims were not filed until January 4, 1962. As shown by the Stipulation, three lawyers associated with the law firm representing the Bank handled the matter at different times, and each thought the other had filed the claims. When it was determined that no such claims had been filed, the Bank sought to and did file its Proofs of Claim against each of the bankrupt corporations.

The Trustee filed objections to the claims and the parties filed briefs in support of their respective positions. In due time the claims were disallowed by the Referee, and this appeal was duly taken. § 57, subs. n, a, b, c of the Bankruptcy Act provide:

§ 57, sub. n: "Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed: * * *"

§ 57, sub. a: "A proof of claim shall consist of a statement under oath, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor.

   *    *    *    *    *    *

§ 57, sub. b: "Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. * * *

§ 57, sub. c: "Proofs of claim may, for the purpose of allowance, be filed by the claimants in the court of bankruptcy where the proceedings are pending or before the referee if the case has been referred."

It was the Trustee's contention, concurred in by the Referee, that this statute requiring the filing of the claims within six months is a statute of limitations, and that the court could not allow any claims filed after said period of six months. Apparently the Bank bases its right to file the claims subsequent to the period of limitation, upon the facts:

(1) that its agent and attorney attended the first meeting of creditors on February 15, and participated in the elec-

tion of the Trustee, and that his appearance was duly noted by the Referee and is reflected in the court's file;

(2) that another agent and attorney for the Baltimore Bank attended a meeting of creditors on March 6, 1961, relating to the consolidation of the cases into one case; that his appearance was duly noted by the Referee, and is reflected in the court's file;

(3) that the Trustee in Bankruptcy has at all times since the filing of the bankruptcy petition, and even prior thereto, in his capacity as receiver of the assets of the bankrupts pursuant to an assignment for the benefit of creditors, had actual notice of the claims of the Baltimore Bank and had actual knowledge of the amount of the claims and the notes whereon they were founded;

(4) that the Trustee had on numerous occasions, discussed the status of the bankruptcy estates with agents, officers and attorneys of the Baltimore Bank, and that:

"All of the above acts were done and carried on by the Trustee and by the Baltimore Bank and its agents and officers and attorneys under the assumption that a formal proof of claim had been filed by the Baltimore Bank."

As shown by the Stipulation, the attorney who originally handled the claim resigned from the law firm. This probably contributed to the confusion resulting in the failure to file the claims.

We may dispose at the outset, of the question of the effect of the knowledge of the Trustee with respect to the existence of the Bank's claims or the amount thereof.

In Fyne v. Atlas Supply Company, 245 F.2d 107, 108, (C.A.4, 1957) the Court stated:

"We agree that mere knowledge on the part of the trustee or of the referee in bankruptcy as to the existence of a claim is not sufficient basis for allowing the filing of an amended claim nor is the listing of the claim in the bankrupt's schedules sufficient."

The letter from one of the attorneys for the Bank to the Trustee, dated October 27, 1961, eight months following the first meeting of creditors, and the reply to it are the only writings in the record, except for the bankrupts' schedule, which show the existence of any claim on the part of the Bank.

There is a letter, dated July 7, 1960, from a vice-president of the Bank informing Mr. Berman, who was at that time the receiver of assets under the assignment for benefit of creditors, of the amounts due the Bank on the notes and requesting placement of said claims. This was, however, six months before the institution of these proceedings and cannot be construed as a claim here.

In their briefs, claimants admit that no formal proof of claim was filed because of the mistaken belief that this had been done by another attorney.

The claimant cites some earlier cases where the court has permitted the filing of the original claim after the six months period, and we are cited particularly to the case of Scottsville Nat'l Bank v. Gilmer, 37 F.2d 227, (C.C.A.4, 1930) where the court said, quoting the District Court:

" 'In the case at bar a rejection of its proof of claim will entail a very heavy loss upon the bank, and the creditors who will profit thereby have done nothing to deserve such windfall.' " (229)

That Court also used this language:

"The bankruptcy court is a court of equity, and endeavors wherever possible to do equity, and the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of *amended proofs of claim*, where there is anything in the record to justify such course of action. It would be harsh and inequitable to refuse the relief upon the statements of facts above recited if there were power to grant it." (229) (Emphasis supplied)

We are also cited to the language in other cases: (In re Fant, 21 F.2d 182) (D.C.W.D.S.C. 1927)

"The trend of modern decisions on this question, without exception, is to the effect that, where there is anything in the record in the bankruptcy case which establishes a claim against the bankrupt, it may be used as a basis for amendment after the expiration of the statutory year, where substantial justice will be done by allowing the amendment." (183)

In all of the cases which have been cited, the courts have desperately sought to find a way to permit the belated filing of claims.

Claimant particularly relies upon Fyne v. Atlas Supply Co., 4 Cir., 245 F.2d 107, supra, but there the court based the right to file the claim on the theory that it was an *amendment*. In that case, the attorney representing the plaintiff wrote a letter to the trustee in bankruptcy well within the six months period giving advice as to pending litigation. In the opinion Judge Parker, Chief Judge, (4 Cir.) quoted from the case of In re Quality Publications Inc. (D.C.S.D.N.Y., 12 F.Supp. 651, 652 setting out the oft repeated language quoted supra from In re Fant.

■ I believe without exception, the cases which have been cited by the Claimant refer to amendments of some pre-existing record authorizing the filing of amended claims. Wherever such a record does appear, the bankruptcy court will exercise its equity jurisdiction to permit the amended claim to be filed.

■ When the claimant attempts to invoke the equity jurisdiction of the bankruptcy court, it encounters the limitation expressed in Burton Coal Co. v. Franklin Coal Co., 67 F.2d 796 (8 Cir. 1933), where the Court said:

"Some question is raised as to the equity jurisdiction of the bankruptcy court. That it is a court of equity in the sense that 'its judges and ref-

erees, in adjudging the rights of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence,' is beyond question. [Citing cases] It has not, however, plenary jurisdiction in equity, but is confined, in the application of the rules and principles of equity, to the jurisdiction conferred upon it by the provisions of the Bankruptcy Act, reasonably interpreted." [Citing cases].

"The plain mandate of the law cannot be set aside because of considerations which may appeal to referee or judge as falling within general principles of equity jurisprudence. * * *"

■ If the statute is a statute of limitations, then the equity jurisdiction of the court may not disregard its limitations and allow the filing of a claim specifically prohibited by the statute. The text books on the subject seem to be uniform in holding that it is a statute of limitations.

Collier on Bankruptcy, Vol. 3, § 57.27, page 378 says:

"The weight of authority considers the six (6) months period as mandatory and immutable. 'This is a statute of limitations. It is even more. It is a prohibition. It is peremptory.'"

Further at page 381 of the same volume of Collier:

"In allowing for extensions of time to file governmental tax claims, and in allowing the belated filing of proofs in cases where there is a surplus after all the other creditors have been paid in full, the Act unmistakably implies that under no circumstances other than those specifically referred to in the statute may the Court admit a claim to untimely proof, but that it is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress."

MacLachlan, the Law of Bankruptcy, page 142 has written on the subject, and states:

"These express provisions for extensions in limited classes of cases (referring to claims of the United States and of any State or subdivision thereof) reinforce the accepted view that the Court has no general discretion to extend the six (6) months period, even on timely application, and certainly no discretion to accept purported excuses such as taking active part in the proceeding in lieu of timely filing."

The question was before the courts in Tarbell v. Crex Carpet Co., 90 F.2d 683, (C.C.A.8, 1937), and there, as in the case before us here, through oversight of counsel, the claim had not been filed. The Referee allowed the claim subsequently filed. The District Court reversed and the Court of Appeals affirmed. The Court, quoting the District Court, stated:

"The Bankruptcy Act, 11 U.S.C.A. 93(n), provides: 'Claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication.'

" 'This provision is a statute of limitations and is mandatory.' " [Citing Chapman v. Whitsett, 8 Cir., 236 F. 873].

The Court also stated:

" 'There must be filed within the statutory period a proof of claim in writing showing that a demand is made and the creditor's intention of holding the estate liable.' " (Citing In re Miller & Company, 2 Cir., 45 F.2d 115, 116) (90 F.2d 685)

and quoting the language used by Judge Swan in the Miller opinion, the court said:

" 'It is urged by appellant that the trend of modern decisions is to allow great liberality in the amendment of claims in bankruptcy. So it is; but it is to be noted that the authorities cited as indicating this liberal tendency deal with situations which fall short of that here presented. They permit amendments to correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings. [Citing cases] It is quite another matter to use an "amendment" as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed.' " (90 F.2d 685)

Quoting further from the same opinion:

" 'If the limitation imposed by section 57n, * * * is to be given any reasonable meaning, we think it must be true that the right to amend can go no further than to permit the bringing forward and making effective of that which in some shape was asserted in the original claim. * * * In the case at bar we can find nothing in the original claim to serve as the basis for the proposed amendment. * * * ' "

Further:

" 'Great liberality in permitting amendment of claims in bankruptcy proceedings is proper, but the statute requiring that a proof of claim in writing be filed is clear, positive and unambiguous and it must not be nullified in the name of equity. If the record made within the statutory period, formal or informal, disclosed facts showing an assertion of a claim against the estate and an intention by the claimant to share in its assets, there would be a basis for the proposed amendment, but there is not sufficient foundation here to justify the amendment. Indeed, there is nothing to amend.' " (90 F.2d 685–686).

A similar question was before the Second Circuit in In re Killanna Realty & Construction Co., Inc., 68 F.2d 718, 719, (C.C.A.2, 1934). In an opinion by Judge Augustus Hand, the court stated:

"The National City Bank cannot be said to have asserted any claim in writing against the bankrupt estate either formally or informally. In our opinion, it was obliged to make some claim in writing within six months after the adjudication in order to avoid the limitation of the statute. Anything less involves too great a departure from the statutory requirement and fails to afford the bankruptcy court the means for expediting administration and promptly closing the estate which the law contemplates." (719)

One of the more recent cases on the subject is, In re Scotchel, 177 F.Supp. 312 (N.D.W.Va.1959), where Judge Watkins, Chief Judge, following the general trend of authority, said:

"All the cases seem to hold, before and after the Chandler Amendment, that there must be something *in the record* that shows that the creditor is asserting a claim against the estate and the nature of the claim before a late amendment is permitted, and the record to be amended must have been made during the six months' period." (314)

I have carefully read all of the cases cited by both sides, and with two or three exceptions, I am unable to find any case where the courts have permitted the filing of a claim except as an amendment to some existing record of a claim that was made during the six months' period.

I have searched the record in a sincere effort to find some why in which the Referee might have applied the rules of equity in a determination of this claim. I have failed to find a scintilla of evidence in the factual situation that indicates that there was a scratch of a pen made by any party in this proceeding during the six months period that would permit the filing of an amended claim.

The claims were not filed as amended claims, but as original claims. The claimant evidently realized that there was nothing in the record to amend.

It is an unfortunate situation from the standpoint of the Bank. It was an honest mistake resulting from the old adage that "too many cooks spoil the broth".

As unfortunate as it may be, it is my conclusion that the statute is one of limitation, that there was nothing in the record to amend, and that the judgment of the Referee in refusing the claims must be affirmed.

It is so ordered.