**FIRST NAT. BANK OF FORT WORTH v. VIRGINIA OIL & REFINING CO. et al.**

**No. 8064.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1936.

Rehearing Denied Jan. 13, 1937.

Robert Sansom, Theodore Mack, and Henry Mack, all of Fort Worth, Tex., for appellant.

Geo. W. Rice, of Fort Worth, Tex., for appellees.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

This is an appeal from an order entered in the Virginia Oil & Refining Company bankruptcy, denying and disallowing generally appellant's claim as a note creditor of the bankrupt. No reasons were assigned either by the referee in originally disallowing the claim, or by the judge in affirming his order. From the record and the briefs of the parties, it appears, however, that the claim was not filed until August 12, 1932, nearly ten years after the adjudication on January 29, 1923, and more than eighteen months after the order of January 29, 1931, reopening the active administration to realize on new values added by the discovery of oil in the East Texas field.

It appears, too, that its allowance was contested on the grounds (1) that it was not proven to be a subsisting and valid claim; (2) that its filing was barred (a) by section 57n of the Bankruptcy Act, 11 U.S.C.A. § 93(n); (b) by laches; and (c) by the four years' statute of limitation of the state of Texas (Vernon's Ann.Civ.St. Tex. art. 5527). Appellant insists that its proof was sufficient, that the Texas statute of limitations has no application to the claim, and that since the discovery of oil has made the estate solvent, neither laches nor section 57n stand in the way of its proving. This is the record.

The proof of claim the bank made was supported not by the note itself, but by an affidavit that the note had been lost. The records of the bank show that on the 29th and 31st of October, 1921, the note was credited with payments aggregating $10,-000, and as thus reduced to $16,331.12 was, as of October 31, 1921, charged off. Though the bankrupt filed a lengthy and detailed list of its creditors covering 52 pages, appellant was not scheduled as one of them. The schedules of assets the bankrupt filed were most complete. They disclosed the ownership of many properties, including more than 100 separate oil and gas leases. Among those scheduled were the oil and gas leases in the East Texas fields, to which the discovery of the field in 1930 gave the value which caused the reopening of active administration of the estate. The first period of active administration was the period from adjudication until 1926, when all of the assets then considered to have value having been realized on, the trustee's final account was approved, he was discharged, and the active administration of the estate ceased. During this period and within one year after adjudication a large number of creditors, secured and unsecured, filed claims. During this period a number of sales were made, and the aggregate sum of $58,000 was realized by the trustee. This sum was disbursed by paying approximately $12,-500 as administrative expenses, $6,784.58 tax claims, and the remainder as dividends to the secured creditors.

Though the trustee was then discharged, the bankrupt was not, nor was the estate closed, but left inactively pending, the East Texas leases and others then having little or no value. During the calendar year after its active reopening in January, 1931, the trustee deposited to his account in appellant bank more than $300,000 received from the administration of the East Texas leases, and by August, 1932, when appellant filed its claim, the trustee had deposited in that bank to his account there, a half million dollars.

In December, 1931, it having become apparent that there would be a surplus over all claims filed, for distribution among the stockholders of the bankrupt an equity proceeding was filed for the purpose of determining who were the rightful owners of stock in the company, there being great confusion in this respect on account of overlapping and duplicating issues, and a receiver was appointed to take charge of and hold any surplus of assets that might remain after the administration in bankruptcy had been completed. Within four or five months after the appointment of the receiver almost 2,000 persons had intervened, claiming to own about 15,000,000 shares of the stock. During all of this period there was great activity in connection with these proceedings, and the expenditure of large sums of money and time on the part of contending stockholders. [1]

In June, 1932, authority was given the trustee to compromise, settle, and dispose of all claims pending in the bankruptcy proceeding which had been first filed after the reopening, and they were settled and disposed of at from 25 to 30 cents on the dollar. When, then, more than ten years after it had written it off, appellant finally elected to file claim on the note, the administration in bankruptcy had been largely completed and it appeared, thanks to the compromise settlement made with other creditors, that there were sufficient assets of money and property belonging to the bankrupt estate to pay in full all allowed claims. Indeed, the receiver in the equity case in October, 1932, applied for and was authorized to withdraw all properties and assets of the estate from the administrative orders of the referee, the court finding and adjudicating that the estate is solvent, and that "there is now and will be when it is wound up, adequate and sufficient moneys and assets to pay off all the debts and after doing so there will be a large sum of money and property to be delivered to the bankrupt and its stockholders." It was ordered, however, that all claims for debts now pending or in process of being determined before the referee remain and continue subject to the jurisdiction of the referee.

Appellees insist that to have permitted the filing of appellant's claim would, on this record, not only have been in direct violation of the letter and spirit of the limiting provision of section 57n requiring all claims to be filed within six months but wholly inequitable. They insist that appellant, knowing of the bankruptcy and of the reopening, having negligently stood by under changing conditions, and until other creditors had been settled with at one-fourth of their claims, ought not now to be permitted to present a claim for payment in full. They insist too, that the circumstances the record discloses; the loss of the note, its having been charged off before the bankruptcy, its not having been scheduled, no claim having been filed and no action taken in regard to it until more than ten years after the charge-off, though the bank at all times knew of the bankruptcy and its reopening, so impeach the claim as to render insufficient the proof tendered in support of it as a lost note. They insist, too, that it is a stale claim and barred by laches, and that section 57n is a complete bar under the facts of this case to its filing.

In the view we take that section 57n providing "claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication" is a complete bar under the facts of this case to the filing of the claim, In re Silk (C. C.A.) 55 F.(2d) 917, Burton Coal Co. v. Franklin Coal Co. (C.C.A.) 67 F.(2d) 796, it is not necessary to decide, and we do not decide, the other points raised. Though it has been decided that the section may not be invoked by the bankrupt where to permit him to do so will be to permit him to take advantage of acts of fraud or concealment, Williams v. Rice (C. C.A.) 30 F.(2d) 814, such exceptional circumstances must be made plainly to appear before its imperative provisions may be disregarded. None such appear here. Indeed, it would be difficult to imagine a case more appropriate for the application

---

[1] Reference is made to Berl v. Crutcher (C.C.A.) 60 F.(2d) 440, in which some of these proceedings and activities are reviewed.

of the statute than this one. A charged-off note, indeed a lost one, it was not scheduled by the bankrupt as a debt, and not presented as a claim in the first active administration through the bankruptcy court though the bankrupt estate was administered in the very bank which had the claim, and though the pendency of the proceeding was known to it. After the reopening of active administration the claim was not filed until eighteen months had passed, though the reopening was at once made known to the bank by the deposit of large funds there, nor until the stockholders of the company, at great expense and cost of time and money, had undertaken to put themselves in a position to receive the surplus after the payment of all properly allowed claims. More than that, not until after a settlement and adjustment paying them 25 cents on the dollar had been made with those creditors who had theretofore filed after the reopening did appellant come in with its claim demanding not only the payment of the sum charged off, $16,331.25, but of that sum with interest and attorneys fees, the whole aggregating nearly .$40,000. No reason was given or excuse made for not filing earlier, except that they had not thought until then that anything could be realized on the claim.

The disallowance was right. The judgment and order on it is affirmed.