**In the Matter of Linda L. BROWN, Debtor.**

**Bankruptcy No. 79 B 06216.**

United States Bankruptcy Court, N. D. Illinois, E. D.

Sept. 29, 1981.

Kornfeld & Spitz, Chicago, Ill., for debtor.

Lawrence Friedman, Chicago, Ill., for Visa/Bankamericard.

Craig Phelps, Chapter XIII Trustee.

## ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This matter came on to be heard upon the motion of the Chapter XIII Standing Trustee that a claim of $1,617.60 [1] filed by VISA/BankAmericard be disallowed as not having been timely filed. The case was filed July 9, 1979, and notices of the filing were mailed to creditors on July 10 by the attorney for the debtor. An official court notice that the first meeting of creditors would be held on August 28, 1979 was mailed August 8, 1979. Under the provisions of Rule 13–302(e)(2) of the Rules of Bankruptcy Procedure, the last day for filing unsecured claims was February 28, 1980. On April 4, 1980, VISA/BankAmericard filed its proof of claim.

VISA/BankAmericard contends that its failure to file timely was due to excusable neglect; that it had not received notice of the proceeding, and consequently on equitable principles should have the time for filing enlarged under Bankruptcy Rule 906(b). In opposition, the debtor contends that Rule 13–302(e)(2) is jurisdictional in nature and does not permit enlargement. It provides as follows:

"(2) *Unsecured Claims.* Unsecured claims whether or not listed in the Chapter XIII statement, must be filed within 6 months after the first date set for the first meeting of creditors in the Chapter XIII case, except as follows:

(A) On application before the expiration of such period and for cause shown, the Court may grant a reasonable, fixed extension of time for the filing of a claim by the United States, a state, or a subdivision thereof.

(B) In the interest of justice the Court may grant an infant, or incompetent person without a guardian up to an additional 6 months for filing a claim.

(C) A claim which arises in favor of a person or becomes allowable because of a judgment for the recovery of money or property from such person or because of a judgment denying or avoiding a person's interest in property may be filed within 30 days after such judgment becomes final, but if the judgment imposes a liability which is not satisfied, or a duty which is not performed, within such period or such further time as the Court may permit, the claim shall not be allowed."

Before considering the interpretations placed on Rule 13–302(e)(2) by that text writers and jurists, an exposition of the theories of the parties to the proceeding will serve to sharpen the focus of the opinion.

Lawrence Friedman is widely known among Chapter XIII specialists to represent the VISA/BankAmericard accounts serviced by The First National Bank of Chicago. One set of notices was mailed to him at his office address of 7 South Dearborn Street, Chicago, Illinois 60603. Mr. Friedman receives a large volume of mail because he represents a number of major con-

---

1. *Matter of Brill*, 52 F.2d 636 (2nd Cir. 1931); *Tarbell v. Crex Carpet Co.*, 90 F.2d 683 (8th Cir. 1937); But *see First National Bank of Fort Worth v. Virginia Oil & Refining Co.*, 86 F.2d 770 (5th Cir. 1936).

Although no mention of it was made by either of the parties, the fact is that $205.53 of that claim represented court costs and attorney's fees in a state court proceeding which was initiated after the Chapter XIII petition had been filed and was in violation of the automatic stay of Bankruptcy Rule 13–402(a). (Circuit Court of Cook County, 79 MI 163186).

sumer creditors. Thus it would be possible that a notice might be missorted, misplaced, or misfiled. Mr. Friedman assured the Court that such errors do not happen in his office, did not occur in this instance, and that the notices were not received at his office.

For reasons of their own the credit card companies prefer that their mail should not be distributed through the Chicago Post Office, and most of those having Chicago business offices use suburban post offices for incoming and outgoing correspondence. The First National Bank of Chicago VISA/BankAmericard division uses Elgin, Illinois, and has a number of post office boxes there.

The present preferred address of VISA/BankAmericard is P. O. Box 2007, Elgin, Illinois 60120, and it was to that address that the attorney for the debtor mailed his notice of the filing of the petition. In 1975 VISA/BankAmericard had requested the Standing Trustee that all correspondence be mailed to:

BankAmericard Operations Center
P. O. Box 2002
Attn: Recovery Supervisor
Elgin, Illinois 60120

It was to that address that the official notice of the first meeting of creditors was sent. VISA/BankAmericard continues to lease P. O. Box 2002 and did not ever advise the Standing Trustee of the change in its procedures which caused P. O. Box 2007 to become the preferred address. VISA/BankAmericard receives a large volume of mail in Elgin, Illinois, and it would have been possible for the notices in question to have been missorted, misplaced, or misfiled. Mr. Friedman assured the Court that such events did not occur in the instant case and that VISA/BankAmericard did not receive either the notice mailed to it at P. O. Box 2002 nor the notice mailed to it at P. O. Box 2007.

As will be explained more fully below, it is not necessary for the Court to determine whether either of the two notices mailed to

VISA/BankAmericard in Elgin was received nor whether either of the two notices mailed to VISA/BankAmericard, c/o Lawrence Friedman in Chicago was received. It is not necessary for the Court to consider what presumptions might be applicable and inferences drawn from the fact that none of the four mailings was returned to the sender, although all four contained return addresses. It is not necessary for the Court to indulge in presumptions of receipt which arise from the mailing of letters properly addressed and containing the correct postage. It is not necessary for the Court to weigh equitable considerations.

The reason that the various evidentiary elements and equitable theories need not be considered is that Rule 13–302(e)(2) is rigid and was intended to be such. It is patterned after § 57(n) of the Bankruptcy Act[2], which provided in pertinent part as follows:

"n. Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first meeting of creditors shall not be allowed. *Provided, however,* That the court may upon application before the expiration of such period and for cause shown, grant a reasonable fixed extension of time for the filing of claims by the United States or any State or any subdivision thereof: *Provided further,* That the right of infants and insane persons without guardians, without notice of the bankruptcy proceedings, may continue six months longer..." [omitted is that portion of the subsection which is the precursor of § 13–302(e)(2)(C)].

Where parties are engaged in adversary proceedings ancillary to a bankruptcy case, they tend to think of it as a separate law suit, as if it were a world apart. To a limited degree this frequently is true, particularly where the issue is one of dis-

---

2. Bankruptcy Act of 1898, (11 U.S.C. § 93(n)); *J. B. Orcutt Co. v. Green*, 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907); *Moore v. Simms,* 257 F. 540 (6th Cir. 1918); In Re *Sieban & Byrnes, Inc.*, 291 F.Supp. 315 (D.C.N.Y.1968).

chargeability, because that is a bi-polar issue between the debtor and a specific creditor. Ordinarily the determination of that issue will not affect the balance of the case because it relates to what the posture of these two parties toward each other will be after the main case has been administered and closed. Where the issue is the allowance of a claim or the size of the claim to be allowed, however, other principles come in to play from those that would be determinative in a dischargeability proceeding. Historically the primary purpose of a bankruptcy case is to provide for an equitable distribution of the assets of a debtor among his creditors, and as the development of the process has advanced a greater emphasis has been placed upon expedition and economy. Consequently, procedures have been devised which have required that the assets be collected promptly so that it may become known how large is the fund to be divided, and also that the claims be filed promptly, so that with their being proven and allowed, it may become known also what the respective shares of the established creditors may be.

Prior to the 1970 amendments to the Bankruptcy Act which caused dischargeability to become an exclusive prerogative of the bankruptcy courts, the focus of most proceedings was the main tent that is the bankruptcy case, and not a side show, that is, an adversary proceeding. Consequently, when the issue was presented as within what time frame a claim had to be filed, it was an issue which affected all of the creditors. It was in the interest of all of them that all claims should be filed reasonably promptly and allowed or not, or partially allowed and partially disallowed, within a period no longer than would be required to collect the assets of the estate. Because that was the focus of the purpose of bankruptcy cases there has been an almost uniform adherence to the principle that the six month period of limitations should be enforced strictly. The related Chapter XI filing provision which established a three month period of filing was equally rigidly enforced.

The nature of the mechanics of handling a Chapter XIII case, or a Chapter 13 case, in a metropolitan area where monthly filing may reach 1,000 requires a standardized procedure under which the Standing Trustee may notify the debtor as early as possible what are the amounts of the filed claims. The present procedure is to send to the debtor's attorney a computer printout which is prepared very shortly after the six-month deadline for filing claims has passed. If this procedure should be changed, it would be extremely disruptive of the entire mechanized and standardized process currently in place. We are satisfied that the drafters of Rule 13–302(e)(2) intended that it be construed narrowly, just as its predecessor § 57(n) of the Bankruptcy Act had been.

IT IS ORDERED THAT the time within which VISA/BankAmericard had to file a proof of claim expired February 28, 1980 and that the Bankruptcy Rule 13–302(e)(2) does not authorize the time to be extended for conventional commercial creditors.