In the Matter of EVANSTON MOTOR CO., INC., d/b/a Evanston Toyota, a/d/b/a Evanston Dodge, Debtor,

Maurice LEVINE, Trustee and Attorney for Trustee, Appellant,

v.

FIRST NATIONAL BANK OF LINCOLNWOOD, Appellee.

No. 82 C 4769.

United States District Court, N.D. Illinois, E.D.

Jan. 14, 1983.

Nicholas G. Dozoryst, Dozoryst & Brustein, Cohen & Cohen, Chicago, Ill., for First Nat. Bank of Lincolnwood.

Maurice Levine, Douglas J. Lipke, Phelan Pope & John, Ltd., Chicago, Ill., for trustee Maurice Levine.

MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Evanston Motor Co., Inc., doing business as Evanston Toyota and Evanston Dodge, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 1101–74 (Supp. V

1981) on March 25, 1980. The bankruptcy court authorized the debtor to operate its business as a debtor-in-possession, without appointment of a trustee. The debtor filed schedules and statements of affairs with the court on April 24, 1980, listing appellee First National Bank of Lincolnwood ("FNBL") as a secured creditor. The schedules did not reveal FNBL's collateral.

On July 16, 1980, appellant Maurice Levine was appointed trustee of the debtor's estate. On July 24, the trustee wrote FNBL, stating that his "examination of the books and records of the debtor reveals that the First National Bank of Lincolnwood may be a secured creditor" of the debtor. The letter concluded,

> In order to facilitate the orderly administration of the within estate, your cooperation in furnishing the undersigned with documentation evidencing your secured position will be greatly appreciated.

On August 18, 1980, an attorney representing FNBL wrote to the trustee.

> Please be advised that we represent the First National Bank of Lincolnwood. We are enclosing for your ready reference, photocopy of the note in the sum of $200,-000.00, dated January 5, 1979, showing a principal balance of $140,000.06, photocopy of assignment of beneficial interest in Chicago Title and Trust Company trust number 1073974, covering the property at 9525 Hamlin, Skokie, Illinois, assignment of beneficial interest in Chicago Title and Trust Company, trust number 1073975, covering the property at 1131–35 Chicago Avenue, Evanston, Illinois.
> If any further information is required, please advise the undersigned.

The documents enclosed with the FNBL's letter revealed that its security was not an asset of the estate, but rather a beneficial interest in a land trust owned by a third party, which fully secured the outstanding balance on the note.

On November 6, 1980, an order was entered by the bankruptcy court converting the chapter 11 proceeding into a liquidation proceeding under chapter 7, 11 U.S.C. §§ 701–66 (Supp. V 1981). On December 2, the clerk of the bankruptcy court sent notice of the conversion to all creditors, including FNBL. The notice advised creditors that they had until June 16, 1981 to file their claims against the estate.[1]

On December 30, 1980, the trustee filed an adversary complaint against FNBL alleging that it had received preferential transfers of property. The action sought recovery of the preferences under 11 U.S.C. § 547 (Supp. V 1981). The pleadings filed in that action indicate that the estate was indebted to FNBL as a result of the note referred to in FNBL's letter to the trustee of August 18, 1980. The preference action has been stayed pending the instant appeal.

On October 9, 1981, FNBL filed a motion for allowance of its claim against the estate. In its motion, FNBL argued that the August 18, 1980 letter constituted an informal proof of claim that had been timely filed. On June 3, 1982, the bankruptcy court ruled that the letter was a timely filed informal proof of claim, and permitted FNBL to amend it so as to comply with the technical requirements for an allowable proof of claim. *In re Evanston Motor Co.,* 20 B.R. 550 (Bkrtcy.N.D.Ill.1982). Thus, the court allowed FNBL to prove its unsecured claim against the estate.[2] This appeal followed.

## I

Bankr.R. 302(a) provides,

> In order for his claim to be allowed, every creditor, including the United States, any state, or any subdivision thereof, must file a proof of claim in accordance with this rule . . . .

With exceptions not applicable here, rule 302(e) provides that "[a] claim must be filed

---

1. June 16, 1981 would be six months from the date of the first creditors' meeting.

2. Since FNBL's collateral was not an asset of the estate, FNBL was not entitled to assert a secured claim against the estate. *See* 11 U.S.C.

§ 506(a) (Supp. V 1981) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . .").

within six months after the first date set for the first meeting of creditors .... "[3] The question presented in this appeal is whether FNBL's August 18, 1980 letter to the trustee complied with this rule. The nub of the trustee's position is that the letter does not constitute a "claim", and even if it did, it was not "filed within six months." We examine each contention in turn.

## II

The parties agree that the August 18 letter does not satisfy the technical requirements for a formal proof of claim. That does not necessarily defeat FNBL, however. What Judge Mack wrote 50 years ago remains a correct statement of the law: "It is well settled that a claim informally made within the statutory period, may be perfected thereafter by amendment." *Lacoe v. DeLong,* 65 F.2d 82, 83 (2d Cir.1933) (*In re Hotel St. James Co.*).[4] The question then becomes, what is a "claim" which, if timely made, may be the basis for later amendment?[5]

The bankruptcy court held that a claim need be no more than some evidence of a debt owed to a creditor of the estate. "The essence of a proof of claim is merely evidence of the existence, nature and amount of debt due and owing to a creditor." 20 Bankr. at 552. However, the authorities indicate that this definition of a claim is incorrect. Courts have universally held, until the ruling of the bankruptcy court in this case, that mere evidence of the existence of

a claim in the hands of the trustee or the bankruptcy court is insufficient, there must also be some evidence of the creditor's intent to assert its claim against the estate. *See Fyne v. Atlas Supply Co.,* 245 F.2d 107, 108 (4th Cir.1957); *Tarbell v. Crex Carpet Co.,* 90 F.2d 683 (8th Cir.1937); *Lacoe v. DeLong,* 65 F.2d 82, 84 (2d Cir.1933) (*In re Hotel St. James Co.*); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143, 147 (D.P.R.1968); *In re Moro Supply Co.,* 229 F.Supp. 129, 130 (E.D.Ark.1963); *In re Aero Bulk Manufacturing Co.,* 221 F.Supp. 627 (W.D.Mo.1963). Similarly, it has been held that the listing of a debt in the debtor's schedules is not a sufficient "claim" to permit later amendment, even though the listing demonstrates that the trustee and the court had knowledge of the estate's debt owed the creditor. *See Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433, 437–38 (2d Cir. 1978); *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584, 589 (9th Cir. 1963); *Fyne v. Atlas Supply Co.,* 245 F.2d 107, 108 (4th Cir.1957); *National City Bank v. Brislin,* 68 F.2d 718, 719 (2d Cir.1934) (*In re Killanna Realty & Construction Co.*); *In re Moro Supply Co.,* 229 F.Supp. 129, 130 (E.D.Ark.1963); *In re Stylerite, Inc.,* 120 F.Supp. 485, 488 (D.N.H.1954). In another case demonstrating the insufficiency of mere evidence that a debt exists, it was held that the testimony of the claimant that the bankrupt was indebted to him for past salary was insufficient to constitute a "claim," since the claimant did not go on to state his intention to hold the estate liable. *See Avidon v. Halpert,* 145 F.2d 884 (2d Cir.1944) (Swan, J.).[6]

---

**3.** When Congress passed the Bankruptcy Reform Act, it intended that filing of proof of claims be mandatory in chapter 7 cases and that the time limit for filing claims continue to be the six month limit contained in the bankruptcy rules. *See* Sen.Rep. No. 989, 95th Cong., 2d Sess. 61 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5857. The six month rule originated in § 57n of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 93n (1976).

**4.** *See Hutchinson v. Otis,* 190 U.S. 552, 555, 23 S.Ct. 778, 779, 47 L.Ed. 1179 (1903); *Sun Basin Lumber Co. v. United States,* 432 F.2d 48, 49 (9th Cir.1970) (per curiam); *National Bank v. Wurlitzer Co.,* 315 F.2d 210, 213 (2d Cir.1963)

(*In re Gibraltor Amusements, Ltd.*); *Converse v. Sullivan,* 194 F.2d 995 (7th Cir.1952) (*In re Pacific Lumber & Fuel Co.*); *In re Kessler,* 184 F. 51, 52–53 (2d Cir.1910).

**5.** The bankruptcy rules say little on the subject. "A proof of claim shall consist of a statement in writing setting forth a creditor's claim .... A proof of claim for wages, salary, or commissions shall conform substantially to Official Form No. 16 or No. 16A; any other proof of claim shall conform substantially to Official Form No. 15." Bankr.R. 301(a).

**6.** *See also National City Bank v. Brislin,* 68 F.2d 718 (2d Cir.1944) (*In re Killana Realty & Construction Co.*) (facts that claimant attended first creditor's meeting and contributed toward

In sum, we believe the concept of a "claim" denotes more than merely a debt owed the creditor by the estate, it also denotes the creditor's intention to attempt to pursue the estate's liability on the debt. We think the proper test was stated by the Third Circuit in *First Nat. Bank v. West,* 227 F. 981 (3d Cir.1915) (*In re Thompson*). "Whether formal or informal, a claim must show (as the word itself implies) that a demand is made against the estate, and must show the creditor's intention to hold the estate liable." *Id.* at 983.[7]

Of course, there are a variety of ways in which a creditor may manifest the necessary demand and intent to hold the estate liable. *See, e.g., County of Napa v. Franciscan Vineyards, Inc.,* 597 F.2d 181 (9th Cir.1979) (per curiam) (*In re Franciscan Vineyards, Inc.*) (claimant sent tax bills to the trustee and requested he pay them), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *Sun Basin Lumber Co. v. United States,* 432 F.2d 48 (9th Cir.1970) (per curiam) (claimant filed objections to trustee's petition to sell property containing evidence of claimant's security interest in the property to be sold); *Walsh v. Lockhard Associates,* 339 F.2d 417 (5th Cir.1964) (trustee and referee knew claimant was a creditor, trustee sued claimant to cancel note, claimant sued debtor to collect on the note), *cert. denied,* 380 U.S. 953, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965); *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584 (9th Cir.1963) (claimants filed their passbooks with bankruptcy court to prove they were bank's creditors); *Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957) (claimant participated in creditors' meetings and wrote and spoke with trustee about his desire to be paid by estate, and claimant's attempts to levy on debtor were alleged in petition in bankruptcy); *In re Lipman,* 65 F.2d 366 (2d Cir.1933) (claimant filed objections to trustee's petition describing itself as a creditor); *Scottsville Nat. Bank v. Gilmer,* 37 F.2d 227 (4th Cir.1930) (claimant and trustee exchanged letters and had talks in which trustee treated claimant as seeking payment from estate); *Carstens v. McLean,* 293 F. 190 (9th Cir.1923) (*In re Patterson-McDonald Shipbuilding Co.*) (claimant sent letter seeking lessee-debtor's payment of delinquent taxes); *In re Kessler,* 184 F. 51 (2d Cir.1910) (claimant sent bill for payment by assignee for benefit of creditors); *In re Faulkner,* 161 F. 900 (8th Cir.1908) (claimant filed document containing all elements of a proof of claim as an application for permission to sell collateral); *In re Roeber,* 127 F. 122 (2d Cir.1903) (claimant filed lien on estate with bankruptcy court); *In re Weco Equipment, Inc.,* 55 F.Supp. 532 (E.D. N.Y.) (Claimant sent letter to referee stating that as soon as amount of claim was determined claimant would file proof of claim), *aff'd sub nom. Public Operating Corp. v. Schneider,* 145 F.2d 830 (2d Cir. 1944) (per curiam); *In re Quality Publications, Inc.,* 12 F.Supp. 651 (S.D.N.Y.1935) (officer of creditor testified as to existence of claim); *In re Fant,* 21 F.2d 182 (W.D.S.C. 1927) (claim was alleged in petition for bankruptcy and claimant sued to set aside conveyance made by the bankrupt); *In re Dialysis Service Co.,* 19 B.R. 940 (Bkrtcy.D. Colo.1982) (claimant sent letter expressing

---

creditors' expenses held insufficient to constitute a "claim" since there was no evidence claimant had decided to pursue its claim rather than merely leaving its options open).

7. *Accord, County of Napa v. Franciscan Vineyards, Inc.,* 597 F.2d 181, 183 (9th Cir.1979) (per curiam) (*In re Franciscan Vineyards, Inc.*), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *National Bank v. Wurlitzer Co.,* 315 F.2d 210, 214–15 (2d Cir.1963) (*In re Gibraltor Amusements, Ltd.*); *Saltser & Weinsier, Inc. v. London Art Furniture Corp.,* 181 F.2d 747, 750 (2d Cir.1950) (*In re High Point Seating Co.*); *Tarbell v. Crex Carpet Co.,* 90 F.2d 683, 685 (8th Cir.1937); *Lacoe v. DeLong,* 65 F.2d 82, 83 (2d Cir.1933) (*In re Hotel St. James Co.*); *In re Paul R. Dean Co.,* 460 F.Supp. 447, 452 (W.D.N.Y.1978); *In re Imperial Sheet Metal, Inc.,* 352 F.Supp. 1149, 1154–55 (M.D.La.1973); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143, 145 (D.P.R.1968); *Guardian Mort. Investors v. Sunset Villas Phase III Condominium Ass'n, Inc.,* 15 B.R. 284, 285 (D.C.M.D.Fla.1981) (*In re Guardian Mort. Investors*); *Beatrice Foods Co. v. Hart Ski Mfg. Co.,* 5 B.R. 326, 327 (Bkrtcy.D.Minn.1980) (*In re Hart Ski Mfg. Co.*). See also *Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433 (2d Cir.1978); *In re Moro Supply Co.,* 229 F.Supp. 129 (E.D.Ark. 1963).

displeasure at not receiving notice of creditors' meeting and described itself as "a major creditor of the bankruptcy"); *In re Neisner Brothers, Inc.,* 2 B.R. 472 (Bkrtcy.S. D.N.Y.1979) (claimant mailed trustee form indicating amount of its claim, and enclosed copy of a proof of claim).

In each of these cases, the logical explanation for the creditor's actions is that it intended to pursue its claim against the estate. However, in no case has a "claim" been found where there was nothing more than evidence of a debt, without a showing of a demand and an intention to hold the estate liable.

Here, there is nothing more than a request by the trustee that FNBL describe its collateral, followed by a letter containing a description of the collateral.[8] The trustee's letter did not invite FNBL to make a claim against the Estate, and FNBL's response did not do so. To the contrary, FNBL's response indicated that it was fully secured by collateral owned by third party guarantors. The logical interpretation of FNBL's letter was that since it was fully secured, it would not need to assert a claim against the estate since it had recourse against the guarantors. This point was made in the seminal *Thompson* case where the court, after noting that creditors are under a duty to timely file proof of claims, observed,

this is especially the duty of a secured creditor, who has the choice (if his security be not also a preference) of relying upon the security and thereby giving up all or a part of his claim upon the estate. This he will be sure to do, if the security is sufficient to pay the whole debt; and, even if it will only pay the debt in part, he will probably apply the security as far as possible and hold the estate liable for the remainder only. But his election must be made in accordance with the act; otherwise, he will be confined in his security.

*First Nat. Bank v. West,* 227 F. 981, 983 (3d Cir.1915) (*In re Thompson* ).[9]

 In sum, the sequence of events goes like this. The trustee observes FNBL's listing on the schedule as a secured creditor, and asks it to document its security. FNBL responds that it is fully secured by third party guarantors' property, and then takes no further steps to make a claim against the estate. Under the circumstances, the trustee is entitled to assume that FNBL will rely on its security, rather than taking the perilous and usually unrewarding route of filing an unsecured claim against the bankrupt's estate. FNBL's August 18, 1980 letter simply does not manifest a demand against the estate, or an intent to hold the estate liable. As a result, it is not sufficient to constitute a timely "claim" which may be later amended.[10]

8. The bankruptcy court tried to buttress its holding by stating that the trustee and FNBL had participated in negotiations to sell certain assets of the debtor's, which demonstrates FNBL's intention to seek recourse against the estate. However, the parties seem to agree that this is not correct; FNBL and the trustee never engaged in such negotiations. Nothing in the record supports the bankruptcy court's statement. In fact, the record reveals the contrary. *See* Brief of Appellant Ex. E. The bankruptcy court's finding of fact on this point is clearly erroneous and, under Bankr. 810, must be set aside.

9. *Accord, Lacoe v. DeLong,* 65 F.2d 82, 83–84 (2d Cir.1933) (*In re Hotel St. James Co.*); *Cloutman v. Weill,* 55 F.2d 917, 919 (2d Cir. 1932) (*In re Silk*); *Guardian Mort. Investors v. Sunset Villas Phase III Condominium Ass'n, Inc.,* 15 B.R. 284, 286 (D.C.M.D.Fla.1981) (*In re Guardian Mort. Investors* ). It is especially unreasonable to construe FNBL's letter as a proof of claim since at the time it was sent, the debtor was in chapter 11, where proofs of claim

are not required. *See* 11 U.S.C. § 1111(a) (Supp. V 1981). *See also* Bankr.R. 3001(a).

10. On appeal, FNBL also argues that a "claim" can be found on the pleadings filed in the trustee's preference action against FNBL, which were filed within six months of the first creditors' meeting. We cannot accept this argument. For one thing, the pleadings are not in the record; we do not know what they contain. For another, an examination of the record below indicates that this argument was not made by FNBL nor reached by the bankruptcy court. It is improper for FNBL to raise the argument for the first time on appeal. Even if we were inclined to consider this argument, we would find it without merit. All a preference action involves is an attempt by the trustee to recover property preferentially transferred to a creditor. *See* 11 U.S.C. § 547 (Supp. V 1981). The fact that the pleadings may establish that the trustee knew FNBL was a creditor is not sufficient to constitute a "claim" against the estate. As noted above, the trustee's mere knowledge

As its last line of defense, FNBL argues that equitable considerations favor a liberal interpretation of what constitutes a "claim," so as not to defeat possibly valid claims of creditors. *See, e.g., Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957); *Scottsville Nat. Bank v. Gilmer,* 37 F.2d 227, 229 (4th Cir.1930); *In re Fant,* 21 F.2d 182 (S.D.S.C.1927). An appeal to "equity", however, will not suffice where there is simply nothing in the record that can be called a "claim." Congress intended creditors to timely file "claims," and where they have not done so, it would undermine congressional intent to permit principles of "equity" to override the plain import of the bankruptcy rules, as Judge Oakes, writing for the Second Circuit, has observed.

> From an equitable standpoint it could be argued that when registered notes are in issue the filing of valid proofs of claim serves no useful purpose, especially where, as here, the debtor is entirely aware that the notes are outstanding and even includes them on its schedules. Be that as it may, Congress chose to require the filing of proofs of claim for such notes. And it was not unaware that failure to comply with this rule could confer a substantial windfall on the debtor. Moreover, it is apparent from repealed provisions of the Bankruptcy Act and a current Bankruptcy Rule that Congress was well aware of the lesser need for a filing requirement when scheduled claims are involved, and provided all the additional protection for creditors in this situation that it thought appropriate.
>
> This clear Congressional intent to require filing of valid proofs of claim within the time limits that it has set is sufficient to preclude us from finding exceptions to these rules in the supposed interest of equity. Beyond this, it cannot be said that when a claim has been scheduled by a debtor, the filing requirement imposing time limitations is a purposeless formality. For one thing, it insures that creditors know what they will receive under a plan within a reasonable time .... It would be inequitable as to all three—old creditors, debtor, and new creditors—not to have a cut-off date beyond which even claims on a scheduled indebtedness may not be filed. Thus, however much we would like to permit the bankruptcy court to consider in a particular case, including this one, whether it would be "equitable" to permit late filing of a scheduled claim, to do so would put the bankruptcy courts in the unenviable position of indefinitely having to consider claims whenever some sort of excuse is asserted. Such a procedure would destroy the objective of finality which Congress obviously intended to promote.

*Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433, 437–39 (2d Cir.1978) (footnotes omitted).[11]

---

that FNBL was a creditor is not sufficient to constitute a "claim." The parties tell us only that the pleadings state that FNBL was a "creditor," they do not tell us that FNBL took the additional step of making a "claim." There is no reason to think it did; a preference action does not involve "claims" by the creditor against the estate, it involves the reverse. It is true that a creditor can defend a preference action by showing it has a secured claim against the estate, but as noted above, FNBL did not have a secured claim against the estate. Its secured claim was against the guarantors. FNBL's "claims" against the estate were irrelevant to the preference action.

11. *See also In re Pigott,* 684 F.2d 239 (3d Cir. 1982); *Wheeling Valley Coal Corp. v. Mead,* 171 F.2d 916, 920–21 (4th Cir.1949); *In re Alsted Automotive Warehouse, Inc.,* 16 B.R. 924, 926 (Bkrtcy.E.D.N.Y.1982); *In re Brown,* 14 B.R. 233 (Bkrtcy.N.D.Ill.1981); *In re Seats,* 3

Collier Bankr.Cas.2d 407, 411–12 (Bkrtcy.E.D. Va.1974).

The trustee makes much of the fact that the bankruptcy court observed that FNBL's claim was more than 50 percent of the total scheduled unsecured debt and that had it known the claim would not have been allowed it might not have converted the case to a liquidation proceeding. 20 B.R. at 551. The trustee suggests that this demonstrates that the bankruptcy court employed "inappropriate" considerations in reaching its decision. As we understand the bankruptcy court's decision, however, this observation is meant to support the court's conclusion that equitable considerations support a liberal construction of FNBL's August 18 letter. However, we reject the court's reliance on "equitable considerations" for the reasons stated above. The trustee is correct in pointing out that the court's observation is premised on a misapprehension, however. FNBL was scheduled as a secured, not an unsecured creditor.

Since there was no "claim" upon the estate within the relevant period, there was nothing to form the basis for the amendment which the bankruptcy court permitted FNBL to make. The court's ruling was erroneous.

### III

Even if the August 18, 1980 letter constituted a "claim," there remains the question of whether it was timely filed. For in addition to making a "claim," rule 302(e) requires that the "claim must be *filed* within 6 months of the first date set for the first meeting of creditors . . . ." Rule 302 also states that "[a] proof of claim shall be filed in the place prescribed by Rule 509." Bankr.R. 302(b). Rule 509 provides,

> (a) Place of Filing. A petition commencing a bankruptcy case shall be filed with the clerk of the district court. After reference, all papers, including a petition filed in a pending case and proofs of claim, shall be filed with the referee unless otherwise directed by local rule or by order of the judge.

> . . . . .

> (c) Error in Filing. A paper intended to be filed but erroneously delivered to the trustee or receiver, or the attorney for either of them, or to the district judge, referee, or clerk of the district court, shall, after the date of its receipt has been noted thereon, be transmitted forthwith to the proper person. In the interest of justice, the court may order that the paper shall be deemed filed as of the date of its original delivery.

Bankr.R. 509.

In general, for a claim to be properly "filed," it must appear in the files of the bankruptcy court. *See In re Mellen Manufacturing Co.*, 287 F.2d 37 (3d Cir.), *cert. denied*, 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961); *In re Lathrop, Haskins & Co.*, 197 F. 164 (2d Cir.1912); *In re Paul R. Dean Co.*, 460 F.Supp. 447 (W.D.N.Y.

1978); *In re Vega Baja Lumber Yard, Inc.*, 285 F.Supp. 143 (D.P.R.1968); *In re Scotchel*, 177 F.Supp. 312 (N.D.W.Va.1959); *In re Beattie*, 102 F.Supp. 107, 111–12 (W.D. Mich.1951); *In re Dorb the Chemist Pharmacies, Inc.*, 29 F.Supp. 832 (S.D.N.Y.1939); *In re Brill*, 52 F.2d 636 (S.D.N.Y.), *aff'd*, 52 F.2d 639 (2d Cir.1931).

FNBL concedes that its August 18, 1980 letter was not filed with the bankruptcy court within the six month period, but relies on a line of cases holding that delivery of a "claim" [12] to the trustee is a sufficient "filing." *See County of Napa v. Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir. 1979) (per curiam) (*In re Franciscan Vineyards, Inc.*), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *National Bank v. Wurlitzer Co.*, 315 F.2d 210, 213 (2d Cir.1963) (*In re Gibraltor Amusements, Ltd.*); *In re Imperial Sheet Metal, Inc.*, 352 F.Supp. 1149, 1153 (M.D.La.1973); *In re Dorb the Chemist Pharmacies, Inc.*, 29 F.Supp. 832, 833 (S.D.N.Y.1939); *In re Dialysis Service Co.*, 19 B.R. 940, 941 (Bkrtcy.D. Colo.1982).

All of these cases were decided by reference to the now-defunct General Order 21 in bankruptcy and the Supreme Court's construction of it in *J.B. Orcutt Co. v. Green*, 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907). General Order 21, the predecessor of bankruptcy rules 302 and 509, stated, "Proofs of debt received by the trustee shall be delivered to the referee to whom the case is referred." 204 U.S. at 100, 27 S.Ct. at 196–97. The Bankruptcy Act then stated that claims could be filed with the district court or the referee. *Id.* at 102, 27 S.Ct. at 197. The Supreme Court held that delivery of a claim to the trustee was a sufficient filing, since the general "order is equivalent to saying that proofs of debt (or claim) may be received by the trustee." *Id.* Since the order placed the trustee under a duty to file the claim with the referee, the Court concluded that filing with the trustee was equivalent to filing with the referee, which the statute permitted. [13]

---

12. For purposes of this part of our decision, we assume that the August 18, 1980 letter is a "claim" against the estate.

13. "Having been received by the trustee, under authority of law, the proofs of debt are therefore sufficiently filed as far as the creditors are concerned, and it is the duty of the trustee to

General Order 21 and *Orcutt* should be contrasted with the current bankruptcy rules, which constitute a change from prior practice. *See* Bankr.R. 509(c) Advisory Committee's Note. The current rule does not provide for filing with the trustee. There is no provision placing the trustee under a duty to file proofs of claim he receives, except in the case of erroneous delivery under rule 509(c) which is not applicable to FNBL's August 18 letter.[14] Rule 509(a) provides that proofs of claim "shall be filed with the referee." That is the only way to file a claim under the current rules.

■ The conclusion we reach is that the rationale of *Orcutt* no longer applies, since it is based on the trustee's duty to file claims which has been in large part abrogated by the current bankruptcy rules. All the cases cited above were decided under General Order 21, except for *Franciscan Vineyards* and *Dialysis Service*. However, neither of those cases considered the differences between General Order 21 and the current rules. As a result, we find *Franciscan Vineyards* and *Dialysis Service* unpersuasive. Rather, we agree with the decision in *In re American Beef Packers, Inc.*, 429 F.Supp. 887, 889 (D.Neb.1977), where the court held that *Orcutt* is no longer good law and that delivery to the trustee is not a

sufficient "filing" except in the case of erroneous delivery under rule 509(c).[15]

Because the August 18, 1980 letter was not timely filed, FNBL did not comply with Bankr.R. 302(a) and its claim should not have been allowed by the bankruptcy court.

### IV

Trustees, creditors, debtors, and even bankruptcy judges are entitled to some measure of finality in bankruptcy proceedings. If a proper "claim" is not timely "filed" by a creditor, that claim should not be allowed. Since no "claim" was "filed" within the applicable six month period in this case, the judgment of the bankruptcy court should be and hereby is reversed, and the case is remanded to the bankruptcy court with instructions to disallow the unsecured claim of appellee First National Bank of Lincolnwood.

deliver them to the referee. If the trustee inadvertently neglects to perform that duty it is the neglect of an officer of the court, and the creditors are in no way responsible therefor." *Id.*

14. Rule 509(c) applies only to a "paper intended to be filed but erroneously delivered to the trustee ..." The drafters of the rule indicated that it applies "when a paper to be filed is misdelivered ...." Bankr.R. 509(c) Advisory Committee's Note. FNBL's letter of August 18 was neither intended to be filed nor misdelivered. It was addressed to the trustee for his information. There is nothing in the record to suggest that it was either intended to be filed or misdelivered.

15. The bankruptcy court relied on rule 509(c) to support its conclusion that the "claim" had been properly "filed," but did not appear to rely on *Orcutt*. Rather, it concluded that the rule goes beyond cases of misdelivery and

reaches any case where a claimant makes a good faith effort to file its "claim." The court concluded that since FNBL "reasonably believed that their proof of claim had been properly filed," rule 509(c) applied. 20 B.R. at 553–54. The bankruptcy court cited nothing in support of this sweeping construction of the rule; indeed, its holding appears to be unprecedented. To expand the rule to cover a letter to the trustee which was not misdelivered or intended to be filed does unconscionable violence to the text and history of the rule. The rule simply does not cover such a situation. *See In re American Beef Packers, Inc.*, 429 F.Supp. 887, 889 (D.Neb.1977); *In re Fisher's Produce Co.*, 1 Collier Bankr.Cases 2d 197 (D.Ore.1974). On appeal, FNBL has not contended that rule 509(c) applies to the case. It has rested exclusively on *Orcutt* and its progeny.