### In re FAULKNER.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1908.)

#### No. 87.

BANKRUPTCY—PROOF OF CLAIM—SUFFICIENCY OF PROOF—AMENDMENT AFTER EXPIRATION OF YEAR.

Within a year after an adjudication in bankruptcy a creditor filed a paper, denominated an "application for sale of collateral," with the referee. Such paper was signed and sworn to, and set out certain notes given by the bankrupt to the creditor, alleged that they were due and unpaid, and also described certain securities given as collateral to such notes, and asked an order for their sale, which was granted. An order was subsequently made confirming the sale and applying the proceeds upon the notes. *Held* that, as such paper contained all the statements essential to a proof of claim, it was amendable after the expiration of the year for filing claims, when the amount due on the claims was ascertained by the sale of the collateral, and that, as so amended, the creditor was entitled to have it considered as his proof of claim for the balance due him.

Philips, District Judge, dissenting.

Petition to Revise Proceedings of the District Court of the United States for the District of Kansas, in Bankruptcy.

The question involved in this petition to revise is whether two certain claims of the petitioner, Faulkner, against the estate of Charles J. Devlin, bankrupt, should have been allowed and permitted to participate in the assets of the estate of the bankrupt. The referee and the judge of the District Court for the District of Kansas ruled adversely to the petitioner, and that is the ruling we are asked to revise. Devlin was adjudicated a bankrupt on July 7, 1905, and some efforts followed to secure a settlement with his creditors. These efforts proved ineffectual, and shortly before the year expired after the date of the adjudication within which claims could be proven against the estate

(Bankr. Act July 1, 1898, c. 541, § 57n, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]), on June 20, 1906, the petitioner filed with the referee a paper, signed and sworn to by him, as follows:

"Application for sale of Collateral. Now comes E. O. Faulkner, and shows to this court that he is the holder of two certain obligations, one of seventy-five hundred dollars ($7,500) indorsed by C. J. Devlin, of which a copy is hereto attached, with all indorsements thereon and made a part of this application, and which obligation was duly protested and C. J. Devlin held as an indorser thereon. Under the terms of the said obligation, marked 'Exhibit A,' the applicant was to receive $7,500, payable February 17, 1906, with 7 per cent. interest payable semiannually. The said obligation was personally delivered by the said C. J. Devlin to this applicant, and at the time of the delivery the said Devlin, as collateral security for the said obligation, turned over to this applicant and placed in his possession 10 first mortgage gold bonds of the Marquette Third Vein Coal Company, being bonds 177 to 186, inclusive, upon which there were·attached and still remain the coupons of July 1, 1905, and all subsequent coupons. Said bonds draw interest at 5 per cent. annually. This applicant has received no money from the said Marquette Third Vein Coal Company, J. S. Wylie, or from the said C. J. Devlin in payment of the said obligation marked 'Exhibit A,' and the same is wholly due and unpaid: nor has any interest been paid upon the said bonds. Applicant further says that the said obligation for which the said collateral was pledged was for an actual loan of money in the ordinary course of business, and was in all respects bona fide, and the deposit of the said collateral was made at a time when your petitioner had no reason to believe and did not believe that the said coal company or the said C. J. Devlin were insolvent, if, indeed, they were at that time. Your petitioner further says that at Topeka, Kan., on June 14, 1904, the bankrupt C. J. Devlin, made, executed, and delivered to him his own certain promissory note in the sum of twenty-five hundred dollars ($2,500), a copy of which is hereto attached, marked 'Exhibit B,' and made a part hereof. At the time of the delivery of the said note to the applicant as collateral security for the payment of said note certificate No. 449 of the Bank of Topeka, Kan., representing 25 shares in said bank, of the par value of $2,500, and also as further collateral certificate No. 278 of the First National Bank, Topeka, Kan., representing 5 shares in said bank, of the par value of $100 each. Nothing has been paid upon the said promissory note marked "Exhibit B,' and the same is wholly due and unpaid, and the applicant says that the said obligation marked 'Exhibit B' was for a sum of money actually loaned in the ordinary course of business, which was in all respects bona fide, and the deposit of the said collateral was made at a time when the applicant had no reason to believe and did not believe that the said Devlin was insolvent, if, indeed, he was at that time. The applicant further says that the value of the said Marquette Third Vein Coal Company bonds are 90 per cent. flat. The market value of the bank stock of the Bank of Topeka is worth 100 cents on the dollar or upwards. The bank stock of the First National Bank of Topeka is of unknown market value to this applicant. The applicant asks that he be given permission to sell the foregoing collateral at public sale under reasonable terms and conditions to the party who will pay the highest cash price therefor, and that if the proceeds of the sale exceed in amount the sum due on the said obligations that such surplus be applied to the payment of other obligations held by this applicant against C. J. Devlin, but which do not appear in the foregoing application, and your petitioner asks for such other relief as he may be entitled to in law."

On July 5, 1906, the referee made a finding and order, the concluding parts of which are as follows:

"(3) There is due to the said Faulkner from the said Devlin the following sums: $7,500, with interest at 7 per cent. from February 17, 1905, and $2,500, with interest at 7 per cent. from June 14, 1904. As a conclusion of law the referee finds that the said Faulkner is entitled to sell said collateral in payment of the obligations of the said Devlin. It is therefore ordered that E. O. Faulkner has permission to sell said collateral at a price not less than three-fourths of the value as above fixed, and apply the same upon the said indebtedness. It is further ordered that the said sales take place at the front

door of the Central National Bank of Topeka, Kan., upon Saturday, July 14, 1906, at 11 o'clock a. m., and that report be made of said sale for the purpose of confirmation and distribution of the funds, and that when said sale is confirmed the title to the said collateral so sold shall pass to the purchaser."

Pursuant to the terms of the order the collateral was sold for the aggregate sum of $7,700, and a report of sale was made to the referee. On July 18, 1906, the sale was confirmed by the referee, and $7,600 out of the proceeds were ordered to be credited upon the note of $7,500 and interest, and $100 were ordered to be credited upon the note of $2,500. Afterwards, and on the same day, the petitioner filed with the referee his three affidavits, one of which is as follows: "At Topeka, in the county of Shawnee and state of Kansas, came E. O. Faulkner, of said county and state, and made oath and said: That the said Chas. J. Devlin, the above-named bankrupt, at and before the filing of the petition in said matter, was and still is justly indebted to the said deponent in the sum of seventy-five hundred dollars. That the consideration of said debt is as follows: Borrowed money drawing 7 per cent. interest from February 17, 1905, as shown by a note of which a copy is hereunto attached, marked 'A,' and made a part thereof. Judgment has been rendered thereon in this court. That no part of said debt has been paid, except by sale of collateral as hereinafter set forth, leaving due July 5, 1906, $625, for which said sum, or any part thereof, this deponent says that he has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of satisfaction or security whatsoever, except as hereinafter set forth by the sale of said collateral."

There was another affidavit of like general tenor relating to the $2,500 note and disclosing a balance due the petitioner thereon of $2,660. The third affidavit so filed detailed the proceedings already referred to by which the collateral had been sold and the proceeds applied upon the notes, and, after setting forth the efforts made by creditors to bring about a settlement with the bankrupt, continues thus: "That affiant took no steps concerning his claim and collateral, expecting that some plan might be devised by the said creditors' committee to carry out the result they sought"—and he then prayed "that this application may be considered as amendatory and supplemental to his claim filed July 5, 1905, and that the residue of said claim against the estate of said C. J. Devlin be liquidated and allowed as above set forth." It further appeared in the affidavit that the bankrupt had died since the adjudication, and that no discharge had been granted to him, and no dividend declared in the estate.

The trustees objected to the allowance of the balance due the petitioner upon the claims, and moved to expunge them, for the reason that they were not filed within one year from the date of the adjudication. The referee sustained the motion of the trustees and made an order disallowing the claims, and the district judge, on a petition for review before him, approved his action and made an order accordingly.

Eugene F. Ware (Ralph Nelson and E. H. Ware, on the brief) for petitioner.

John S. Dean and A. A. Hurd, for respondent.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). Section 57 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]) provides that:

"Proof of claims shall consist of a statement under oath in writing signed by a creditor setting forth the claim, the consideration therefor and whether any and if so what securities are held therefor and whether any and if so what payments have been made thereon and that the sum claimed is justly owing from the bankrupt to the creditor."

It matters not what the paper filed with the referee on July 5, 1905, was styled. Scrutiny of it discloses that it contained every essential statement required by section 57 to constitute proof of a claim, and fully and accurately informed the court of the amount of petitioner's claims and the securities held for their payment. The referee by his order made a finding of the exact sums due the petitioner, as well as the amount of interest thereon, and ordered the collateral sold and the proceeds to be applied on "said indebtedness," and that report of sale be made to him for confirmation. All this was done within the year following the date of the adjudication, and it cannot be denied that it constituted a complete scheme by the execution of which the balance due the petitioner after application of the proceeds of sale of the collateral could be ascertained from the court records. No further act on the part of the petitioner was necessary to definitely fix the balance due him. Notwithstanding this, however, he, after the year expired, out of abundant precaution made a résumé of the proceedings taken and the result thereof, and definitely stated the same, and formally asked for an allowance of the balance so found to be due him, in order that he might participate pro rata with other unsecured creditors in the assets of the bankrupt's estate. This was denied, and his claim was expunged. We think this was wrong. The limitation of time within which proofs of claim should be made must necessarily be observed. Such disposition of bankruptcy cases that creditors may expeditiously realize what they may is important and necessary; but the substance of things, and not the forms merely, should be observed. Bankruptcy proceedings are equitable in their nature, and should be as far as possible conducted on broad lines to accomplish the ultimate purpose of distributing the assets of a bankrupt pro rata among his creditors. Atchison, T. & S. F. Ry. Co. v. Hurley, 82 C. C. A. 453, 153 Fed. 503, 508.

In this case everything necessary to determine the balance due the petitioner was done before the year expired within which proof of claims could be made. All the statements required by section 57 had been made, the debt had been judicially determined and stated, the collateral had been ascertained, an upset price fixed, a sale ordered, and provision had been made for the application of the proceeds of sale to the satisfaction of the debt pro tanto. The working out of this scheme necessarily and accurately resulted in the amount due the petitioner. "Id certum est quod certum reddi potest." Assuming, however, but not deciding, that the proceedings taken and orders made did not constitute technical proof of petitioner's claims within the year, as required by section 57, we have no doubt they constituted such substantial showing of it as warranted the amendment of the original proof of claim as made by the petitioner in his affidavits filed July 18, 1906. Loveland on Bankruptcy (3d Ed.) § 92, where many supporting authorities are cited, lays down as an accepted principle that the courts should be liberal in awarding amendments to subserve the ends of justice, and says that:

"An amendment may be allowed at any stage in the proceedings as justice may require."

This court held, in Re Plymouth Cordage Co., 68 C. C. A. 434, 135 Fed. 1000, that the fact that the petition contained no averment that the alleged bankrupt was not a wage earner or farmer is remediable by amendment, and in Taft Co. v. Century Savings Bank, 72 C. C. A. 671, 141 Fed. 369, 372, that even jurisdictional facts may be supplied by an amendment of the petition after an appeal to this court. The Court of Appeals for the Second Circuit, in Re Roeber, 62 C. C. A. 122, 127 Fed. 122, held that a petition filed within a year after adjudication, containing averments that there was due and owing to the petitioner a certain sum of money for the payment of which a certain fund then in court was security, which was obviously intended to secure an appropriation of that fund only, contained the substance of a proof of claim, which was amendable after the year expired, although the petition as filed was not sworn to by the claimant and was otherwise technically defective. Judge Lacombe, speaking for the court, said:

"Bankruptcy courts have the usual power of courts of justice, upon motion and for good cause, to allow amendments. All parties were advised of the claim within the year. There is no dispute that the amount claimed is justly owing from the bankrupt. The amendment was in furtherance of justice, and within a legitimate exercise of the power of amendment, under the authorities."

In Buckingham v. Estes, 63 C. C. A. 20, 128 Fed. 584, the Court of Appeals for the Sixth Circuit considered a case where a petition had been filed within a year after the adjudication of bankruptcy to establish a resulting trust in some land standing in the name of the bankrupt, and also for an accounting concerning rents received by him. The case resulted in a decree as prayed for, but the rents were not ascertained until after the year expired when proof was made in usual form. Objection was made to its allowance on the ground that the proof was made too late, but the court held that the original petition stated the substance of a claim, and that it was amendable after the year expired, when the amount actually due had been ascertained. Judge Lurton, speaking for the court, said:

"It would be a narrow construction of sections 57 and 57n which would not regard a claim so presented and litigated in a bankrupt proceeding as 'proven' within the limitation of the section. A claim 'proven' within the year is amendable after the lapse of the year, and the court below probably regarded her petition as a 'statement under oath, in writing, signed by a creditor, setting forth the claim,' etc., and therefore subject to amendment, to comply with the further formalities of section 57. In this the court did not err."

Hutchison v. Otis, 190 U. S. 552, 555, 23 Sup. Ct. 778, 47 L. Ed. 1179, is cited.

None of the cases, supra, presented so complete a proof of debt, such an accurate compliance with the requirements of section 57 within the permissible year, as is disclosed by the record in this case. Both reason and authority we think unite in favor of permitting Faulkner to make formal proof of the balance due him as undertaken by him. The learned district judge erred in not permitting him to do so. Accordingly the orders of the referee disallowing the claims, and the order of the district judge made on September 16, 1907, approving and con-

firming the orders of the referee, must be set aside, with directions given to the bankruptcy court to consider the amended claims as made, and, if found valid, to allow them.

It is so ordered.

PHILIPS, District Judge, dissents.