In re Edward D. CLAPP, Debtor.

Edward D. CLAPP, Plaintiff,

v.

NORWEST BANK HASTINGS, N.A., Defendant.

Bankruptcy No. 3–82–265, Adv. No. 85–0219.

United States Bankruptcy Court, D. Minnesota, Third Division.

Feb. 6, 1986.

**922**

William C. Mortenson, Minneapolis, Minn., for plaintiff/petitioner.

Steven Schroer, Minneapolis, Minn., for Norwest.

Bruce Rasmussen, Minneapolis, Minn., for Emil Walsh.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for hearing November 5, 1985, on several motions of the parties. One is Norwest Bank of Hastings' (Norwest) motion to dismiss the adversary proceeding filed by Debtor seeking declaratory judgment denying post-petition interest and attorney's fees on Norwest's prepetition unsecured claim in the bankruptcy case. A second, is Norwest's motion, in the alternative, for summary judgment in the adversary proceeding. A third motion is Debtor's cross-motion for summary judgment in the adversary proceeding. The fourth is the Debtor's motion filed in the bankruptcy case, objecting to Norwest's claim. Emil Walsh, a creditor, also filed an objection to Norwest's claim.

William Mortenson appeared representing the Debtor; Bruce Rasmussen appeared representing Mr. Walsh; and Steven Schroer appeared representing Norwest. After hearing arguments of counsel, the Court took the matter under advisement and allowed additional time for filing of supplemental briefs, which were duly submitted. Additionally, Mr. Schroer and Mortenson each filed responsive memoranda which were received on December 3 and December 13, 1985, respectively. Mr. Schroer filed a final letter memorandum on January 9, 1986.

Based on the file, records, briefs and arguments of counsel, the Court makes this Order pursuant to the Rules of Bankruptcy Procedure.

## I.

### FACTS

Edward D. Clapp filed for reorganization under Chapter 11 of the United States Bankruptcy Code on February 12, 1982. Prior to filing, the Debtor had been involved in a number of lawsuits, including an action commenced by Norwest to recover from the Debtor on an unsecured $99,-000.00 promissory note. This action was pending when the Chapter 11 petition was filed. The lawsuit was contested by Clapp, who asserted a counterclaim against Norwest for an amount substantially in excess of the balance due on the note. Although the state court action was stayed by the filing of the petition, the claim remained the most hotly contested claim during pendency of the Chapter 11 case.

Shortly after the petition was filed, but before the Debtor had completed filing all of his schedules, the United States Trustee appointed an Unsecured Creditors Committee. Dennis C. Morris, a vice-president of Norwest, was selected to be on the Committee and eventually served as its chairman.

On March 3, 1982, the Clerk's office mailed its notice setting the first meeting of creditors for April 9, 1982, and determining the last day for filing claims as October 11, 1982. On the last day to timely file claims, the Debtor obtained an ex parte order extending the time to December 10, 1982. Norwest did not file a formal "Proof of Claim" by December 10, 1982, but did file an "Amended Proof of Claim" on August 26, 1983.

Although Norwest took an active part in the bankruptcy proceedings from the out-

set, its attorney, Steven Schroer, was initially involved only to the extent of attempting to negotiate a possible settlement of Norwest's claim against Mr. Clapp arising out of the prepetition note and resulting state court litigation. Shortly before the extended period for filing claims had expired, a fire swept through the Northwestern National Bank Building, destroying Mr. Schroer's office and many of its files, including his Norwest file regarding the claim. Due to the loss, he was unable to provide a reason why Norwest had not filed a formal "Proof of Claim" within the prescribed time.[1]

On December 8, 1982, two days prior to expiration of the extended period, Mr. Schroer sent a letter to Mr. Mortenson stating his intention to proceed with the state court action after obtaining relief from stay in the bankruptcy case. The letter also advised Mr. Mortenson that Mr. Schroer's files had been destroyed in the recent fire, and asked for his help in reconstructing his client's file.

On January 23, 1984, the Debtor filed his first Plan of Reorganization. Following objections by a number of parties, including Norwest, and after extensive hearings, the Debtor filed an Amended Plan and Disclosure Statement on June 28, 1984, and a Second Amended Plan and Disclosure Statement on October 3, 1984. After continuing objections, the Debtor amended the Disclosure Statement and Plan again, and, on December 27, 1984, the Court confirmed the Third Amended Plan of Reorganization.

Under the confirmed Plan, Norwest's claim is classified as a Class T claim and is treated alternatively, at Norwest's election. Norwest could choose:

1. To settle for "25 percent of the fully allowable claim (as if it were not contested) for principal and interest due as of the petition date 2/12/82 to be entered as an allowed Class R claim,"[2] or,

2. To have its claim treated as an "allowed claim as finally allowed by the Court after resolution by settlement and/or a jury trial (and any appropriate appeals) in an adversary proceeding in Minnesota State District Court following confirmation of the plan". The decision or settlement would then be entered or treated as a Class R claim.

Norwest chose the second option and, following confirmation, obtained judgment in the state district court on the note with interest and attorney's fees to date of the judgment in the total amount of $208,-686.86 plus interest from August 14, 1985, to the date of entry of judgment.[3]

On August 8, 1985, the Debtor commenced Adversary Proceeding No. 3–85–219 seeking declaratory judgment on the right to post-petition interest and attorney's fees under the Plan. Shortly thereafter, Norwest moved to dismiss the complaint and also moved for summary judgment. The Debtor filed a cross-motion for summary judgment on October 17, 1985, seeking determination that the allowed amount of the claim is the amount owing on the original note, plus prepetition interest and attorney's fees. The Debtor later amended the motion, seeking disallowance of the claim in its entirety based on Norwest's failure to file a formal "Proof of Claim" prior to December 10, 1982, in the bankruptcy estate. On October 21, 1985, the Debtor filed an objection to the claim of Norwest in the main bankruptcy case. The objection to claim is premised on the same grounds as the Debtor's amended cross-motion for summary judgment in the adversary proceeding.

## II.

### DISCUSSION AND DISPOSITION

Although the procedural history of this bankruptcy case and adversary proceeding

---

1. According to Mr. Schroer, his best recollection was that Norwest had intended to file a claim without his assistance.

2. Class R is the class of general unsecured creditors.

3. Norwest was also awarded judgment on the Debtor's counterclaim.

initially appears somewhat complex, there are essentially only two issues which must be determined in order to resolve the matters in controversy. First, the Court must determine whether Norwest's claim should be allowed in any amount in light of its failure to file a formal "Proof of Claim". Second, if Norwest's claim should be allowed, the Court must determine the allowed amount of that claim—that is, whether it includes post-petition interest and attorney's fees under the Debtor's confirmed Chapter 11 plan of reorganization.

*Allowance of Norwest's Claim*

■ Under the Bankruptcy Code, the informal assertion of a claim during the filing period can provide a sufficient basis for its allowance and later amendment, even though no formal "Proof of Claim" has been filed, "where the record contains all the facts necessary to establish a *bona fide* indebtedness and the circumstances under which it was incurred." Collier on Bankruptcy 14th Ed. § 57.11(1), p. 195–96. This Rule was adopted by the Eighth Circuit at least as early as 1908 in *In re Faulkner*, 161 F. 900 (8th Cir.1908). The District of Minnesota has recognized this holding in *In re Hart Ski Mfg. Co., Inc.*, 5 B.R. 326, 327 (Bankr.Minn.1980). In that case, the Court stated that the bar date "does not apply to claims clearly and sufficiently asserted within the filing period set." *Id.* at 328. It reasoned that the previous case law in the Eighth Circuit should continue under the Code so that "if there is upon the record in the bankruptcy proceedings" within the time limitations, "anything sufficient to show the existence, nature and amount of a claim, it may be amended even after the expiration of the period." *Id.*

The new bankruptcy code has not altered the substantive law in this area. The underlying purpose is the same; to provide the trustee or the debtor-in-possession with adequate notice of the claim against the estate. The filing of the proof of claim is a ministerial act which does not alter the legal and equitable relationships involved. *Id.* at 327–28.

Other courts have recognized that claims and their amendments can be allowable where the creditors' actions consisted merely of letters to a trustee or debtor-in-possession, alone, or where letters were coupled with participation by the creditor in bankruptcy proceedings. *In re Dialysis Serv. Co., Inc.*, 19 B.R. 940 (Bankr.Colo. 1982), *In re Basche-Sage Hardware Co.*, 56 B.R. 3 (Bankr.Or.1985). Still other courts have recognized an amendable claim, in the absence of the timely filing of a formal "Proof of Claim", where the Debtor listed a creditor in its petition and the creditor later participated on a creditor's committee. *In re Rite Autotronics*, 27 B.R. 599 (Bankr.App. 9th Cir.1982).

■ In the instant case, the creditor, Norwest, clearly and frequently asserted its intention to pursue its claim. In letters to Mr. Mortenson, the Debtor's attorney, Norwest clearly indicated that although it would consider a settlement offer from the Debtor, Norwest intended to pursue the matter. Furthermore, the Court record itself shows that from the outset of the case, Norwest was actively involved in protection of its interest.[4] Within nine days after the partial filing of the petition, an officer of Norwest was appointed to the Unsecured Creditors Committee, and eventually named as its chairman.

It would be fanciful, under these circumstances, to suggest that a creditor who took an active part in a bankruptcy proceeding without filing a formal "Proof of Claim", had "no intention of protecting his interest as a creditor in the bankrupt estate". *In re Lipman*, 65 F.2d 366, 368 (2nd Cir.1933). Norwest asserted its claim quickly, clearly and forcefully, and there was no doubt that the Court, the Debtor and all other interested parties in the case received adequate notice and were aware of this claim.

In fact, Norwest had been vigorously pursuing its claim well before and right up to the filing of the bankruptcy petition. A state court action was pending in Ramsey

---

**4.** Norwest had no claim against the Debtor or Debtor's estate, except for the one at issue here.

County District Court in which Norwest had twice moved for summary judgment. The Debtor recognized Norwest's unliquidated claim and listed Norwest in its schedules of creditors as an unsecured creditor for $128,000.00. Of course, the Debtor listed the claim as disputed, and the amount of the claim was hotly contested then as it is now. But it is clear that the listing of Norwest's claim in the Debtor's claim schedules; Norwest's own involvement in the bankruptcy case; the letters sent to the Debtor-in-Possession regarding settlement; and repeated reference to the state court litigation, were, taken together, sufficient to put all interests in the case on notice as to the nature and amount of Norwest's claim.

Additionally, as Norwest points out, the Debtor provided for Norwest's claim in each of its plans of reorganization.[5] The Debtor admits that the litigation with Norwest has been "the most hotly disputed" matter in this proceeding. While the state court suit was stayed for a long period, "all parties to the bankruptcy were well informed of its nature and scope." *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1381 (9th Cir.1985).

Neither the Debtor nor any creditors have been prejudiced by the manner in which Norwest has established its claim in the case; and no one has been unfairly surprised. All interested parties were on notice that Norwest had a claim, and all had actual notice of the nature of that claim from the commencement of the bankruptcy case. Moreover, all interested parties treated Norwest's claim prior to confirmation as if a formal "Proof of Claim" had been timely filed. Norwest's claim was separately provided for in each one of the various drafts of the plans circulated to creditors, and the Plan was finally confirmed by the Court without objection by any interested party based on Norwest's status.[6]

For these reasons, Norwest's claim should be allowed.

### Allowed Amount of Norwest's Claim

Having found that Norwest's claim should be allowed under the circumstances, the Court must now determine its allowed amount. The cases cited by the parties clearly show that when a creditor seeks to amend an informal proof of claim, it must not be allowed to increase the original amount of the claim. *In re Hart Ski*, 5 B.R. at 328. "In determining whether to allow an amendment, the Court must strictly scrutinize the proposed amendment to ensure that no new claim is being asserted." *Id. See also In re Dialysis*, 19 B.R. at 940.

Norwest's claim against the Debtor was based on a prepetition note for which the Debtor vigorously disputed his liability. The claim was a result of extensive state court litigation prior to the filing of the Chapter 11 petition as well as a state court determination subsequent to confirmation of the Debtor's Plan.

In an effort to settle this heated dispute, the Debtor proposed two alternatives for treatment of the claim in his Chapter 11 Plan. Norwest could either accept a percentage of the fully allowable claim, or it could proceed in state court in attempt to

---

5. Not only was the unsecured claim provided for in the Plan, it was singled out from other unsecured claims and treated separately.

6. The Debtor did not discover that Norwest failed to file a formal "Proof of Claim" until after the Plan was confirmed. Despite the special treatment provided Norwest as a Class T creditor, the Debtor now argues that the definition of "allowed claim" in a more general section of the Plan provides a basis for his objection to its allowance in any amount. The term "allowed claim" is defined in the Plan:

8.01 *Allowed Claim* shall mean a Claim, as finally allowed, (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation, and/or (b) scheduled in the list of creditors prepared and filed with the Court which amounts are not disputed, contingent or unliquidated as to the amount, or (c) approved by order of the Court, which order is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

Under the circumstances of the case, the argument has no merit.

recover the full amount of the prepetition claim. Specifically, the Debtor's Plan provided for the following treatment:

7.19 *Class T Claims:* Allowed unsecured claim of Norwest National Bank of Hastings (*Norwest Hastings*), f/k/a Northwestern National Bank of Hastings, will be liquidated or litigated at the *option* of Norwest Hastings as follows:

A. 25% of the fully allowable claim (as if it were not contested) *for principal and interest due as of the petition date (02/12/82)* to be entered as an Allowed Class R claim; *or*

B. The allowed claim, as finally allowed by the Court, after resolution by settlement and/or a jury trial (and any appropriate appeals) in an adversary proceeding in Minnesota State District Court, following confirmation of the Plan. *The decision or settlement will be entered or treated as a Class R claim.* (emphasis added).

There is nothing in this Plan that suggests that the Debtor had any intention of paying post-petition interest or attorney's fees on Norwest's claim. Option A refers to principal and interest due as of the petition date, merely fixing the allowed amount of the claim at 25 percent and pouring it over into Class R. Option B provides for an alternate determination of the allowed amount of the claim should Norwest elect to litigate the matter, and the claim in the amount determined under Option B would likewise be poured over into Class R.

The treatment of Class R claims was the subject of specific discussions between the Debtor and the Unsecured Creditors Committee. The Debtor clearly stated to the Unsecured Creditors Committee and each of its members that he had no intention of paying interest on any of the unsecured claims in Class R. Norwest, which actively participated in those discussions, cannot now say that it was unaware of the general treatment of unsecured claims.

 Nevertheless, Norwest contends that the second option available to it, the option which it chose, left the door open for post-petition interest and attorney's fees. Both options, however, refer to an allowed or allowable claim. These are terms with well-defined meanings in the bankruptcy context. 11 U.S.C. § 502, as it applies to unsecured claims, provides that the Court shall determine claims as of the "date of the filing of the petition" and allow such claims, except to the extent that "such claim is for unmatured interest." While a plan could provide for payment of post-petition interest and attorney's fees with respect to unsecured claims, that possibility alone is not a compelling reason to engraft such a provision onto a confirmed Chapter 11 plan that does not specifically so provide. Furthermore, in this case, the Plan on its face clearly precludes such interest and fees.[7]

To allow Norwest post-petition interest and attorney's fees on its prepetition claim would result in a Court-imposed amendment to the Debtor's plan. Although Norwest claims to be seeking clarification of the Plan, it is actually asking for adequate protection retroactive to the date of the bankruptcy petition on an unsecured claim.

### III.

Based on the foregoing, IT IS HEREBY ORDERED:

1. Norwest's claim is hereby allowed as timely; and

2. Norwest's claim is allowed in the amount of $132,631.96, which is the principal amount owing on its note, together with prepetition interest accrued and attorney's fees incurred toward collection.

---

7. It is clear to the Court that the inducement offered Norwest by the Debtor in Option "A" was avoidance of attorney's fees to be incurred by Norwest in continued litigation, along with avoidance by it of the risk of losing the litigation on the Debtor's counterclaim which exceeded in amount Norwest's claim entirely. There is no expressed intention in paragraph 7.19 to pay Norwest more than its prepetition claim under any circumstances.